819 So.2d 503 (2002)
STATE of Louisiana
v.
James A. McMILLAN.
No. 2002-181.
Court of Appeal of Louisiana, Third Circuit.
June 12, 2002.
*504 Ronald E. Dauterive, Assistant District Attorney, Lafayette, LA, for Plaintiff/Appellee, State of Louisiana.
James W. Robideaux, Attorney at Law, Lafayette, LA, for Defendant/Appellant, James A. McMillan.
Court composed of MARC T. AMY, MICHAEL G. SULLIVAN and ELIZABETH A. PICKETT, Judges.
PICKETT, Judge.

FACTS
At approximately 2:00 a.m. on January 2, 2000, in Scott, Louisiana, a police officer, Scott Lewis, observed the defendant driving a vehicle erratically. The officer activated his overhead lights to initiate a traffic stop. The defendant accelerated. A second police unit joined the chase. Ultimately, the defendant abruptly pulled into a restaurant parking lot, stopped, and exited his vehicle. A third police unit arrived while the defendant shouted at the officers and refused to obey their commands. The defendant resisted the officers' initial attempts to attain physical control of him, so they deployed a canine. The defendant continued to resist, but was eventually subdued by the officers and the canine. The officers finally handcuffed him and also shackled his legs. Lewis searched the defendant at the scene and found no weapons.
The defendant was transported to University Medical Center in Lafayette. While there, Lewis removed the shackles, handcuffed one of the defendant's hands to the bed, and searched him again. The officer located his driver's license, but no weapons. After a doctor examined the defendant, he was taken to the Lafayette Parish Correctional Center.
Officers took the defendant into the jail's holding area. One policeman handcuffed the defendant's hands to a rail in the holding area while they waited to book him into jail. The defendant was uncooperative, refusing to answer questions.
When a jail deputy instructed Lewis to bring the defendant into the main jail area, the officer released the handcuffs and began to escort the defendant. The defendant, however, raised his hands and began backing away. Lewis stepped into the main jail area, because the jail's special response team had already been alerted. The team arrived in the holding area and tried to restrain the defendant but he resisted. The response team took the defendant to the ground with Lewis's assistance. *505 A weapon discharged and Lewis realized the defendant had a small pistol. Lewis managed to disarm the him and discovered the defendant had shot himself in the chin.
On January 26, 2000, the State charged James A. McMillan with attempted first degree murder of a police officer, introduction of contraband into a penal institution, aggravated flight from an officer, misrepresentation during booking, and simple cruelty to animals. On April 25, 2001, the State proceeded to trial on the charges of attempted murder, introduction of contraband into a penal institution, and aggravated flight from an officer. The State did not proceed on the remaining two charges.
On April 26, 2001, the jury found the defendant not guilty of attempted murder, guilty of introduction of contraband into a penal institution, and guilty of simple flight, a misdemeanor verdict responsive to the aggravated flight charge.
The defendant was sentenced on July 31 to a term of five years at hard labor for the introduction of contraband charge. He was placed on supervised probation for five years with a condition of probation being that he serve ninety days in the parish jail.
That same day, the defendant filed a Motion For Post Verdict Judgment of Acquittal, alleging the evidence was insufficient to support the conviction. The court denied the motion in open court. The defendant appeals the conviction.

DISCUSSION
The defendant alleges two assignments of error:
1. The trial court erred when it improperly instructed the jury regarding what proof of defendant's intent is required in order to convict him of introducing contraband into a penal institution or the responsive verdict of attempting to introduce contraband into a penal institution, and;
2. The state failed to introduce legally sufficient evidence to prove that the Sally Port area was part of the Lafayette Parish Correctional Center for purposes of La.R.S. 14:402.

SUFFICIENCY OF THE EVIDENCE
The defendant argues the evidence was insufficient to support his conviction for introduction of contraband into a penal institution, because the state failed to prove the intake holding area, variously termed the "bullpen" or "Sally Port," was part of the correctional center, for purposes of La.R.S. 14:402.
This court has previously discussed the analysis for claims challenging the sufficiency of the evidence:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for this Court *506 to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
State v. Kennerson, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97); 695 So.2d 1367, 1371.
The relevant statute, La.R.S. 14:402 states, in pertinent part:
E. It shall be unlawful to possess or to introduce or attempt to introduce into or upon the premises of any municipal or parish prison or jail or to take or attempt to take or send therefrom, or to give or to attempt to give to an inmate of any municipal or parish prison or jail, any of the following articles which are hereby declared to be contraband for the purpose of this Section, to wit:
* * *
(6) Any firearm or any instrumentality customarily used as a dangerous weapon, including explosives or combustibles, except through regular channels as authorized by the officer in charge of any institution herein, or any plans for the making or manufacturing of such weapons or devices; ....
La.R.S. 14:3 provides:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their ususal sense, in connection with the context, and with reference to the purpose of the provision.
The fair import of the word "premises," taken in its usual sense, would include rooms in a building, attached buildings, and adjacent grounds.
The testimony indicated that at the time of the offense, the defendant had not been brought through the gate that leads into the main facility. However, the testimony of Officer Lewis indicated that the defendant had already been brought through another gate to enter the holding area, and that they were in the parish prison building. Deputy Brown and Deputy Credeur both referred to the defendant being in the holding area between two gates. Clearly, the holding area was part of the premises of the parish prison.
There is sufficient evidence to sustain the conviction under the Jackson standard, and we find this assignment of error has no merit.

JURY INSTRUCTION
The defendant argues the court improperly instructed the jury regarding the intent element of La.R.S. 14:402. The relevant portion of the statute reads as follows:
E. It shall be unlawful to possess or to introduce or attempt to introduce into or upon the premises of any municipal or parish prison or jail or to take or attempt to take or send therefrom, or to give or to attempt to give to an inmate of any municipal or parish prison or jail, any of the following articles which are hereby declared to be contraband for the purpose of this Section, to wit....
La.R.S. 14:11 explains how intent is expressed in criminal statutes:
The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms "intent" and "intentional" *507 have reference to "general criminal intent."
(Emphasis added).
We further note La.R.S.14:8, states:
Criminal conduct consists of:
(1) An act or a failure to act that produces criminal consequences, and which is combined with criminal intent; or
(2) A mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent; or
(3) Criminal negligence that produces criminal consequences.
(Emphasis added).
The relevant portion of La.R.S.14:402 does not state what level of intent must be proved. In State v. Converse, 529 So.2d 459, 466 (La.App. 1 Cir.), writ denied, 533 So.2d 355 (La.1988), the court concluded, "La.R.S. 14:402 does not require the presence of either general or specific criminal intent; rather, the possession of contraband in a penal institution is criminal per se."
In the initial instruction, the court instructed the jury that La.R.S. 14:402 required general criminal intent, while attempt required specific intent. During deliberations, the jury sent the judge a note asking about intent, and the judge made the following statement:
The next question: Must intent be shown as to the introduction of contraband into a penal institution? Specific intent is not required in order to convict one of introduction of contraband into a penal institution. I will read you the definitionI don't know if you need me to read both specific and general intent, but I will read them both to you.
Again, specific intent is not required. Specific intent is defined as that state of mind which exists when the circumstances indicate that the defendant actively prescribed the desired [sic] criminal consequences to follow his act or failure to act. This is not required in this case. Specific intent is not required.
General criminal intent is present when the circumstances indicate that the defendant, in the ordinary course of human experiences, must have averted to the prescribed criminal consequences as reasonably certain to result from his act or his failure to act. General criminal intent is always present when there is specific intent. Okay? Okay. Thank you.
We agree with the first circuit's conclusion in Converse that La.R.S. 14:402 does not require the presence of either general or specific intent. The jury instructions given actually gave the defendant the benefit of the state being required to prove an element not actually required by law.
A conviction will not be reversed on the ground of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981). Although the instruction was technically incorrect, it certainly was not prejudicial to the defendant. In fact, the instruction served only to benefit the defendant's case. We find, therefore, this assignment of error lacks merit.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent.
The defendant received an illegally excessive sentence for introduction of contraband *508 into a correctional facility. The maximum term of imprisonment under La.R.S. 14:402 is not more than five years, with or without hard labor. The defendant was sentenced to five years at hard labor, which was suspended. He was placed on supervised probation for five years with a condition of probation being that he serve ninety days in the parish jail. Under the terms of this sentence, the defendant is exposed to a term of imprisonment which exceeds the maximum allowed under the statute. Accordingly, the defendant's sentence is vacated and this matter is remanded to the trial court for re-sentencing to a term which does not exceed the maximum allowed by law.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.