436 So.2d 559 (1983)
STATE ex rel. Danny H. GRAFFAGNINO
v.
John T. KING, Secretary of the Louisiana Department of Corrections, J.D. Middlebrooks, Warden.
STATE of Louisiana
v.
Danny H. GRAFFAGNINO.
Nos. 82-KH-0556, 83-KA-0016.
Supreme Court of Louisiana.
June 27, 1983.
Rehearing Denied September 1, 1983.[*]
*561 William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Donald J. Richard, Robert Brinkman, Asst. Dist. Attys., for respondent in No. 82-KH-0556 and plaintiff-appellee in No. 83-KA-0016.
Paul Henry Kidd, Monroe, for relator in No. 82-KH-0556 and defendant-appellant in No. 83-KA-0016.
BLANCHE, Justice.
Defendant Danny Graffagnino was convicted in a non-jury trial of forcible rape, a violation of LSA-R.S. 14:42.1. Following a presentence investigation, he was sentenced to eight years at hard labor, with two years to be served without benefit of parole, probation, or suspension of sentence. No appeal was taken. Subsequently, in an application for post-conviction relief, the defendant urged that he was denied effective assistance of counsel in that his retained attorney had utterly failed to prepare for trial. The trial court denied the application, but we granted the defendant's request for a writ of certiorari and ordered the matter consolidated with an out-of-time appeal. State ex rel. Graffagnino v. King, 422 So.2d 426 (La.1982). The defendant now urges five assignments of error.
The defendant met the sixteen year old victim on the evening of May 19, 1979 at an *562 Opelousas, Louisiana night spot called the "Southern Club." The victim had gone to the club with several of her friends and had been seen dancing with several young men. According to the defendant, she looked "pretty loose" (drunk) and he wanted to dance with her. After several dances, the victim wanted a ride home because it was near the 2:00 a.m. closing time for the club. The defendant solicited from a friend a ride to his house where he intended to get his father's car to take the girl home.
Once at the defendant's house, the couple went inside to the defendant's room so he could show her his drum set and electric guitar. Shortly thereafter, the two went "out walking" and ended up in a nearby graveyard. The stories of the two diverge at this point, but it appears that some sort of struggle ensued, and the victim fell into a ditch full of water. The victim claims that she fell into the ditch while escaping from the defendant when he began to pull at her clothes. On the other hand, the defendant testified at trial that the victim became quite enamored once they reached the graveyard and stumbled into the ditch as she excitedly tried to remove her pants.
The victim testified that the defendant forced her to remove her jeans after she fell into the water and proceeded to rape her. She asserted that she attempted to scream, but that the defendant had threatened to hit her if she did not "shut up" and submit. She testified that she submitted in fear of violence by the defendant and believed that further resistance would be pointless. By all accounts, the two were in the graveyard for several hours, and the victim was brought to her home at nearly 5:00 a.m., soaking wet and covered with mud. She immediately told her parents that she had been raped, and a physical examination about an hour later showed that penetration had indeed occurred.[1]
Following the incident, the defendant gave three different versions of the events which had transpired that night. In a voluntary statement to police after his arrest, the defendant denied ever having been to the graveyard. At trial, he admitted having gone to the graveyard with the victim, but denied having had sexual intercourse with her and asserted that he had repelled her sexual advances. At the hearing on his application for post-conviction relief, the defendant admitted to having perjured himself at trial and admitted to having had intercourse with the victim, but asserted that it was consensual. However, the victim was not without inconsistencies in her testimony. On cross-examination, she admitted that she had first told her mother that she had not been raped, but then immediately changed her story to state that she had been.

ASSIGNMENTS OF ERROR NOS. 1, 2
By these assignments, the defendant urges that the trial court erred in admitting into evidence the statement given to police following his arrest on the grounds that he was never given formal notice by the state of its intention to introduce it at trial. He also argues that the statement had not been given voluntarily and should not have been used for impeachment purposes. Specifically, the defendant urges-on appeal that the statement was made without a knowing and intelligent waiver of his right to remain silent, the right to consult with an attorney, and the right to have an attorney present during questioning. Moreover, the defendant argues, he was not advised of each right separately in order to ascertain his voluntary waiver of each.[2]
*563 Our review of the record shows that the defendant was arrested by the Opelousas City Police late on the night of May 21, 1979 and brought directly to the courthouse. At 11:18 p.m., the defendant was advised of his Miranda rights and executed a waiver of those rights. At 12:29 a.m. he gave the taped statement he now complains of and was again informed of his rights by the interrogating officer, who expressly advised the defendant that he could terminate the interview at any time.
Before a confession is admissible into evidence, the burden is upon the state to prove that it was given freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. LSA-R.S. 15:451; State v. Brogdon, 426 So.2d 158 (La.1983); State v. Jackson, 414 So.2d 310 (La.1982). The factual determinations of the trial court as to the voluntariness of a confession will not be overturned on appeal unless unsupported by the evidence. State v. Jackson, supra; State v. Vaccaro, 411 So.2d 415 (La.1982). In our view, there is no evidence in the record which would establish that the defendant was not adequately informed of his constitutional rights or that the statement was given under conditions demonstrating constitutional violations. Other than his assertion that he was "sleepy," the record does not reflect that the defendant was so disoriented that his state of fatigue should vitiate the voluntariness of the statement. Moreover, the defendant was warned twice of his rights before submitting to questioning.
As to the defendant's contentions that he had received no pre-trial notice of the state's intention to introduce the statement for purposes of impeachment, our review of the record shows without qualification that defense counsel had indeed been given notice pre-trial. The purpose of the notice required by La.C.Cr.P. art. 768 is to avoid surprise to the defendant and to allow adequate time for preparation of a defense. See State v. Billiot, 421 So.2d 864 (La.1982). Even though it is apparent here that the defendant did have prior notice of the state's intention to use the statement, such notice is generally unnecessary in bench trials. State v. Korman, 397 So.2d 1346 (La.1981); State v. Cleary, 262 La. 539, 263 So.2d 882 (1972). Assuming, arguendo, that the notice given did not comport with the written requirement of art. 768, the defendant could not have been surprised by the state's use of the statement because of his counsel's actual notice; absent surprise, there is not sufficient prejudice to the defendant to require reversal of the conviction. Cf. State v. Spot, 340 So.2d 1349 (La.1976); State v. Bolen, 338 So.2d 97 (La. 1976). Moreover, the proper procedure by which to urge suppression of an inculpatory statement is through the pre-trial motion to suppress. La.C.Cr.P. art. 703; State v. Smith, 283 So.2d 470 (La.1973); State v. Chambers, 263 La. 1080, 270 So.2d 514 (1972).
These assignments are without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment, the defendant urges that the state failed to prove his guilt beyond a reasonable doubt. More specifically, he argues that the state failed to prove, within the meaning of LSA-R.S. 14:42.1, that the victim was "prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believe[d] that such resistance would not prevent the rape".
It is well-settled that the evidence is sufficient to support the conviction when any rational trier of fact, in viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review. See State v. Richardson, 425 So.2d 1228 (La.1983).
*564 Here, the trier of fact accorded much weight to the testimony of the victim that she believed that the threat of physical violence by the defendant made resistance useless, especially when viewed against the defendant's conflicting accounts of the events which transpired. The victim testified that the defendant had forced her to the ground and made her remove her jeans. She asserted that she began screaming, but that he threatened to hit her if she didn't "shut up" and submit. She claimed that her submission was prompted by a fear of violence by the defendant.
Furthermore, the examining physician testified that grass and other foreign matter had been forced into the victim's vagina and that the condition of her genitalia was consistent with forcible intrusion or intercourse. We are of the considered opinion that the testimony of the victim as to the forcible nature of the attack, the testimony of other witnesses as to her disheveled and upset condition upon returning home, and the testimony of the examining physician as to the forcible nature of the intrusion into the victim's vagina constituted sufficient evidence such that any rational trier of fact, in viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment, the defendant argues that the trial court erred in denying his application for post-conviction relief on the grounds of ineffective assistance of counsel. Specifically, the defendant urges that his retained trial attorney, Sherman Stanford, was utterly unprepared to conduct an adequate defense due to lack of a pre-trial investigation. Furthermore, he contends that his attorney failed to apprise him of the consequences of waiving a jury trial, that his attorney did not advise him that he need not take the witness stand, and that his attorney failed to file an appeal post-trial.
To establish a claim of ineffective representation, the defendant must demonstrate that counsel did not meet the level of competency "normally demanded" in criminal cases. An adequate defense must be based on "informed professional deliberation." McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); State v. Felde, 422 So.2d 370 (La. 1982). Effective assistance of counsel does not mean "errorless" counsel, or counsel which may be judged ineffective on mere hindsight, but counsel "reasonably likely to render and [actually] rendering reasonably effective assistance." State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982).
In the recent decision of State v. Berry, 430 So.2d 1005 (La.1983), this court established a meaningful analysis for claims of ineffective assistance of counsel. Adopting the two-pronged inquiry of McQueen v. Swenson, 498 F.2d 207 (8th Cir.1974), this court established the first inquiry as to whether counsel violated some duty to the client. The second inquiry is whether the violation, if any, prejudiced the client in the defense of his case. In our opinion, the defendant's trial counsel breached no duty toward the defendant which unduly prejudiced the defendant in defense of his case.

Failure to Investigate
Attorney Stanford testified that he was approached by Graffagnino and agreed to handle the case for a flat $750 fee. He had very few records on the matter but did have notes from his initial interview with the defendant. Stanford testified further that the defendant was working offshore at the time and that contacting him was very difficult. He also remembered reviewing with the defendant the state's file of the case at the district attorney's office. The defendant affirmed that he and Stanford had reviewed the state's file together pre-trial.
Stanford testified that he believed that the case required little pre-trial investigation since he had the defendant's statement to the police and the statements of the *565 state's witnesses. He admitted to being aware of other witnesses, but asserted that the defendant had never produced them as he had promised he would. Regarding his failure to file a pre-trial motion to suppress the defendant's statement, Stanford asserted that he was convinced after conversations with the defendant concerning the statement that it had been given freely and voluntarily and that a motion to suppress would have been useless.
As for the trial itself, Stanford confessed that he would have liked to have been more prepared and that his trial strategy had been to show that the victim had engaged in consensual intercourse with the defendant. Stanford asserted that he conferred with the defendant at the close of the state's case and advised him to take the stand and tell the truth, i.e., that he had indeed gone to the graveyard with the victim, but that the intercourse had been consensual. He testified that he urged the defendant to admit having lied in his statement to the police, but that he had done so out of fear. The defendant admitted that Stanford told him to take the stand and tell the truth, but asserted that he believed he was required to take the stand and did not know he could be impeached with his prior statement.
Based on the testimony of Stanford and the defendant, we can only conclude that Stanford's pre-trial and trial preparation and strategy were at the level of competency "normally demanded" in criminal cases. State v. Felde, supra. Even if we were to assume, arguendo, that Stanford's failure to file a pre-trial motion to suppress the defendant's statement demonstrates ineffective trial preparation or investigation, we are of the considered opinion that such a motion would have been denied. As we noted in our treatment of assignments of errors numbers one and two, supra, the evidence is overwhelming that the statement had been given freely and voluntarily. Accordingly, any breach of duty arising out of Stanford's failure to move to suppress the statement caused the defendant no prejudice in the defense of his case.

Waiver of a Jury Trial
Stanford justified his advice that the defendant waive a jury trial as follows:
* * * * * *
"[In] speaking with him and observing him as he walked, as he talked, everything about him the few times that I had seen him and I had seen him several times anyway, I don't know exactly how many but it convinced me that he was not always under control and I had serious reservations about placing him in front of a jury because I thought that there was a likelihood either that he had an emotional or psychological problem or that he was heavily into drugs and I did not want to have a jury see him under those conditions."
* * * * * *
Stanford testified further that he had advised the defendant to seek medical aid for his drug abuse and urged him not to take drugs during trial.
As viewed by Stanford, these circumstances influenced his judgment to advise the defendant to forego a jury trial, and we would hesitate to "second guess" his judgment on the matter. In any event, the defendant has not offered any argument as to why a jury trial would have proved a better tactic. We would be inclined to believe that a judge would be better able to accord the proper weight to the inconsistencies in the defendant's testimony as to the events which transpired that night. We are satisfied that Stanford's advice on the matter was based upon his best professional judgment, and we cannot say that the advice fell below that normally demanded of competent counsel in criminal cases.

Advice to Take the Witness Stand
As we noted earlier, Stanford testified that he had conferred with the defendant at the close of the state's case and advised him to take the stand and tell the truth. Our review of the record has convinced us that the defendant was adequately informed of the consequences of taking *566 the stand. Given the defendant's penchant for stretching the truth, we cannot say that the trial court erred in finding Stanford's testimony as to the circumstances under which the defendant took the stand more credible than the defendant's. The record is clear that the defendant chose to disregard the advice of his attorney to tell the truth and instead chose to perjure himself while under oath. Even if we were to assume, arguendo, that the defendant was totally unaware that he might be impeached with his admittedly untrue prior statement, we are loathe to reward such dishonesty with a new trial. Any reasonably competent counsel would have advised his client to take the stand and tell the truth if it were his best professional opinion that such truthfulness might result in an acquittal. This defendant simply chose to ignore such sound advice when belief in his credibility was the single most important element of his defense. In our opinion, it was the defendant's persistent untruthfulness which destroyed his own credibility and paved the way for his conviction.
In conclusion, we find that any mistakes which were made by Stanford in the preparation and trial of this case were more attributable to the defendant's decided lack of cooperation and lack of veracity than to Stanford's alleged incompetence. Stanford's strategic and tactical decisions were rendered ineffective by the defendant's decision to continuously perjure himself and skirt the truth.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 5
By this assignment, the defendant argues that the trial court erred in relying on false, prejudicial, and misleading factors in imposing sentence. Specifically, he urges that the trial court improperly considered the fact that he had refused to submit to a polygraph examination. The defendant further alleges that the presentence investigation contained "false information" not examined by defense counsel prior to sentencing, and that the report contained an admission by him that intercourse had indeed occurred that night, which caused the trial judge to hold his perjury at trial against him in sentencing.
Our review of the sentencing proceeding shows that the presentence investigation had been made available to Stanford prior to sentencing, a fact which he confirmed at the post-conviction hearing. It is well-settled that the defendant (directly or through his counsel) has a right to access to the presentence report and to rebut any adverse information. See State v. Segers, 357 So.2d 1 (La.1978). However, these rights are not abridged merely because the defendant fails to exercise them when given the opportunity. Irregularities or deficiencies in the report will not be reviewed for the first time on appeal where the defendant fails to bring them to the attention of the trial court before or at the time of sentencing. State v. Cox, 369 So.2d 118 (La.1979). Accordingly, any false information or irregularities alleged by the defendant to be in the presentence report and relied upon by the trial judge in imposing sentence are not properly before this court.
In asserting that these allegedly improper factors did not comport with the proper sentencing guidelines of art. 894.1, the defendant makes no direct claim that his sentence is excessive; however, inasmuch as Stanford's failure to enter any objections at the sentencing hearing reflects on the defendant's claim of ineffective assistance of counsel, discussed in assignment of error no. four, supra, we believe that such objections would not persuade us that the defendant was sentenced either improperly or excessively. Although the sentencing colloquy is somewhat threadbare in its treatment of the art. 894.1 sentencing factors, we find no "strong possibility" that the eight year sentence is excessive. See State v. Wimberly, 414 So.2d 666 (La.1982). Moreover, we find the record replete with factors which establish that the sentence is not unconstitutionally excessive and the presence of evidence which "clearly illumines" the trial judge's sentencing choice. Cf. State v. Parish, 429 So.2d 442 (La.1983); State v. Williams, 397 So.2d 1287 (La.1981).
*567 The eight year sentence is not in the high range for a forcible rape conviction since the defendant could have received as many as 40 years. LSA-R.S. 14:42.1. Although this case does not appear to involve the most egregious of facts, the defendant's persistent untruthfulness has made it impossible for us to ascertain precisely what happened that night. As a result of the attack, the victim has undergone psychiatric counseling on a continuous basis in order to better deal with the aftermath of the attack.
The defendant is a high school dropout with several serious breaches of the law committed of late. He previously pleaded guilty to shoplifting and was placed on two years probation. That probation was revoked in 1977 after the defendant was again arrested for shoplifting. He has been charged with two separate counts of theft, one count of burglary, two separate counts of possession of marijuana, and one count of possession of marijuana with intent to distribute, although the record reflects no disposition of these charges. The defendant has admitted to drug and alcohol abuse. Given the circumstances surrounding this offense and the defendant's criminal propensities and decided penchant for lying, we cannot say that the trial court abused its discretion in imposing an eight year sentence.
This assignment is without merit.

DECREE
For these reasons, the conviction and sentence of the defendant, Danny Graffagnino, are affirmed.
NOTES
[*] Calogero and Dennis, JJ., would grant a rehearing.
[1] The examining physician found grass and other foreign matter as far as one inch into the victim's vagina. The defendant's explanation at trial was that this had occurred when the victim fell into the ditch with her pants down.
[2] The defendant failed to move to suppress the statement pre-trial in accordance with La.C. Cr.P. art. 703 and LSA-R.S. 15:451, nor did he enter a contemporaneous objection to use of the statement for impeachment purposes in accordance with La.C.Cr.P. art. 841. See Tyler v. Phelps, 643 F.2d 1095 (5th Cir. 1981), cert. denied, 456 U.S. 935, 102 S.Ct. 1992, 72 L.Ed.2d 455; State v. Clayton, 427 So.2d 827 (La.1982). We examine these contentions on the merits, however, for purposes of our review of assignment of error no. 4, infra, urging ineffective assistance of counsel.