| ¶ GREMILLION, Judge.
The defendant, Harry Julius Ahlfeldt, IV, was tried by a jury and found guilty of the offense of battery of a police officer, a violation of La.R.S. 14:34.2. He was sentenced to serve two years at hard labor, with one year suspended, placed on two *665 years supervised probation, and ordered to pay court costs. Defendant filed a motion for new trial which was denied. He now appeals arguing that the evidence was insufficient to show an essential element of the charged crime in that it was not shown that: Trooper Anthony Pitts (1) was acting in the performance of his duties because he never informed him that he was under arrest; (2) qualifies as a “police officer” as defined in La.R.S. 14:34.2(A)(2); and (3) required medical attention for his injuries. For the following reasons, we affirm.
ACTING IN THE PERFORMANCE OF HIS DUTY
In his first assignment of error, Defendant asserts that the trial court erred in denying his motion for new trial because there was insufficient evidence offered to prove that Trooper Pitts was acting in the performance of his duties since he never informed Defendant that he was being placed under arrest.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the factfinder to weigh the respective credibility of Uthe witnesses and, therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the State to obtain a conviction for battery of a police officer, it must prove the elements of the crime beyond a reasonable doubt. “Battery of a police 'officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.” La.R.S. 14:34.2(A)(1).
Defendant claims that the evidence was insufficient to satisfy the requisites of La. R.S. 14:34.2, in that it was not shown that Trooper Pitts was acting in the performance of his duty at the time of his injury. Specifically, he contends that Trooper Pitts never informed him that he was under arrest.
Trooper Pitts testified that he was awakened by his neighbor, Mrs. Renée Ahlfeldt, when she knocked on the wall of her apartment. ' Mrs. Ahlfeldt, Defendant’s ex-wife, testified that she knocked on the wall to summon Trooper Pitts to her apartment to remove Defendant. Trooper Pitts testified that he went to his front door and asked Defendant to come to his door to talk. He further testified that Defendant stepped back from Mrs. Ahl-feldt’s door, walked past him, and directed expletives in his direction. According to Trooper Pitts, Defendant left the balcony area of the apartment and walked downstairs to the ground level where he continued shouting expletives at him. Trooper Pitts’ wife, Loretta, substantiated his testimony. Trooper Pitts claimed that he instructed Defendant to leave several times and he further |3informed Defendant that he would be arrested if he did not leave. Mrs. Ahlfeldt verified Trooper Pitts’ testimony.
Defendant testified that he was not only leaving, but almost “around the corner” of the complex, when Trooper Pitts told him to leave. Defendant claimed that Trooper *666 Pitts told him not to come back, and, in response, he asked why. Defendant stated that Trooper Pitts told him he would have him arrested if he returned to the apartment complex. During the exchange between Trooper Pitts and Defendant, other tenants began emerging from their apartments.
Joshua Daniels, an employee of the Grant Parish Sheriffs Department, stepped out of his mother’s apartment after hearing “racial terms” being shouted and went to investigate the problem. As he proceeded to the bottom level of the complex, Daniels testified that he heard the Defendant say to Trooper Pitts, “If you come down here, I’ll sue the f-g state police.” Trooper Pitts and his wife testified that they also heard Defendant say those words.
Trooper Pitts stated that he told Defendant to leave several times and, in response, Defendant continued shouting profanities. Trooper Pitts then instructed his wife to get his handcuffs and his sneakers. He testified that he requested his handcuffs because he decided to arrest Defendant for disturbing the peace and for violating a restraining order.
Trooper Pitts testified that he slipped his shoes on and then approached Defendant. He said that he reached for Defendant’s shoulder at which time Defendant turned violently, causing the two to hit a nearby wall. Trooper Pitts further ^testified that he took Defendant down to the ground to control him and that he was on top of Defendant when they hit the ground.
Defendant, on the other hand, testified that he called Trooper Pitts a racially inflammatory name and that Trooper Pitts then “took off down the steps and tackled” him. According to other witnesses, after Trooper Pitts asked his wife to get his handcuffs and his sneakers, he stopped to partially put his shoes on and then approached Defendant, after which a fight ensued.
In his testimony, Trooper Pitts said the struggle continued for a while, with Defendant attempting to get up while he pushed him back down. He testified that his finger and arm were both bitten by Defendant during the struggle and that he felt a “slicing sensation” on the lower part of his belly. Trooper Pitts said that he did not stop to examine the injuries because he had to maintain cover on Defendant.
During the course of the struggle, Mrs. Pitts came down a few of the stairs with a cordless telephone at which time Trooper Pitts yelled to her to “tell them Code Three, Code Three. Office[r] in need of assistance.” As Trooper Pitts and Defendant continued to struggle, other individuals ran down the stairs to assist him.
Daniels testified that he saw two people fighting when he reached the bottom level of the complex. He further testified that Trooper Pitts told him that he worked for the Louisiana State Police and that he needed help restraining Defendant. Daniels said that he and a friend, Brandon Slaytor, assisted the trooper during which time Defendant continued shouting obscenities and racial epithets. Daniels also testified that he smelled a strong odor of alcohol coming from Defendant. While | ^Trooper Pitts held Defendant down, Daniels said he witnessed Defendant’s resistance of Trooper Pitts’ instructions, as well as Defendant biting and scratching him.
Trooper Pitts testified that he, Daniels, and Slaytor held Defendant down and attempted unsuccessfully to handcuff him. After several minutes passed, two Alexandria Police Officers arrived. Trooper Pitts said that the two officers attempted to restrain Defendant before finally subduing him with pepper spray.
*667 We find that the jury could have properly found, after viewing the evidence in the light most favorable to the prosecution, that Defendant had reasonable grounds to believe that Trooper Pitts was acting in the performance of his duties as a Louisiana State Trooper. The testimony adduced at trial indicates that Trooper Pitts issued a warning to Defendant which Defendant understood to be from a member of the Louisiana State Police. The testimony that Defendant responded to Trooper Pitts’ warnings with the phrase, “If you come down here, I’ll sue the f-g State Police,” further indicates that he knew that. Trooper Pitts was acting in his official capacity as a Louisiana State Trooper.
Whether or not Defendant was instructed that he was under arrest at the time of the physical resistance does not change the fact that Defendant knew Trooper Pitts to be acting in his official capacity as a Louisiana State Trooper. Thus, Defendant’s first assignment of error is without merit.
POLICE OFFICER
In his next assignment of error, Defendant claims that the trial court erred in denying his motion for new trial because the evidence adduced at trial was insufficient to show that Trooper Pitts was a police officer as defined by La.R.S. p.4:34.2(A)(2).fi That statute reads: “For purposes of this Section, ‘police officer’ shall include commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, constables, wildlife enforcement agents, state park wardens, and probation and parole officers.” La.R.S. 14:34.2(A)(2). Defendant argues that the statute is not applicable since it fails to specifically name state troopers among the law enforcement officers listed in its definition of police officers. He argues that another statute, La. R.S 14:30(B), specifically names “state policemen” in its definition of peace officer. Defendant’s reasoning is flawed. La.R.S. 14:34.2(A)(2) uses the term “commissioned police officers,” while La.R.S. 14:30(B) does not. La.R.S. 14:34.2(A)(2) is general while La.R.S. 14.30(B), First Degree Murder, is more specific. It is clear that the Legislature intended that all duly commissioned police officers' would be considered peace officers under the provisions of La. R.S. 14:34.2(B)(2). Trooper Pitts testified that he was a state trooper, a duly commissioned officer, and that he had his commission with him at trial. Further, Defendant stipulated that he was a state trooper. The State proved beyond a reasonable doubt that Trooper Pitts was a commissioned police officer and, accordingly, Defendant’s second assignment of error is without merit.
INJURY REQUIRING MEDICAL ATTENTION
Defendant asserts in his third and final assignment of error that the trial court erred in denying his motion for new trial because it was not shown that Trooper Pitts’ injury required medical attention. The penalty provision of Battery of a Police Officer is a fine of not more than one thousand dollars or imprisonment with or ^without hard labor for not less than one year nor more than five years, or both, if the injury requires medical attention. La. R.S. 14:34.2(B)(3).
Trooper Pitts testified that the Defendant bit him on the finger and on the arm and also managed to cut him on the abdomen while he was being restrained. Trooper Pitts also showed the jury the remaining scars from his injuries. Defendant admitted biting Trooper Pitts and, in fact, testified that he bit down “very hard.”
Trooper Pitts’ discharge instructions from the emergency room consisted of treatment instructions and information *668 pertaining to human bite wounds. The information supplied by Rapides Regional Emergency Department recognizes that human bites often become infected and that bacteria often enters the wound through a break in the skin, causing infection. Trooper Pitts’ treatment consisted of an examination of the bites on his finger and arm, and an examination of the cut on his abdomen, which was treated with an application of Betadine.
In State v. Boyd, 97-0579, pp. 3-4 (La.4/14/98); 710 So.2d 1074, 1077, the supreme court wrote:
We find that the clear and unambiguous wording of the statute means that any battery of a police officer which necessitates that the officer seek the care of doctors, nurses or other medical services, including but not limited to operations, hospitals, and institutional care incurred primarily for the prevention or alleviation of a physical or mental defect or illness sustained in the battery is “require[d] medical attention.”
... The mere fact that a battered officer seeks medical attention is not sufficient to make the treatment medically necessary. We find that ‘an injury which requires medical attention’ is an injury where the battered officer receives a battery for which the attention of a medical professional (nurse, paramedic, doctor, etc.) is required. For example, while a simple scratch normally would not require medical attention, a scratch, bite or needle prick where the officer is possibly exposed to a disease which necessitates testing would be sufficient to require medical attention.
|sWe, therefore, find that the jury, after viewing the evidence in the light most favorable to the prosecution, was reasonable in finding that Trooper Pitts’ injuries required medical attention, as provided by La.R.S. 14:34.2(B)(3). This assignment is likewise without merit.
CONCLUSION
For the foregoing reasons, Defendant’s conviction is affirmed.
AFFIRMED.