NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-0738

STATE OF LOUISIANA

VERSUS

FRANCIS LONCAR

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF CONCORDIA, NO. 05-0837
HONORABLE LEO BOOTHE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and
James T. Genovese, Judges.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

Bradley R. Burget
Assistant District Attorney
Seventh Judicial District
4001 Carter Street, Suite 9
Vidalia, LA 71373
(318) 336-5526
COUNSEL FOR APPELLEE:
        State of Louisiana

James E. Beal

**Post Office Box 307**
**Jonesboro, LA 71251-0307**
**(318) 259-2391**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Francis Loncar**

**Francis Loncar**
**Pro Se**
**D.O.C. # 509080, Walnut #4**
**Louisiana State Penitentiary**
**Angola, LA 70712**

PETERS, J.

A jury convicted the defendant, Frances Loncar, of the offense of second degree murder, a violation of La.R.S. 14:30.1. After the trial court sentenced him to serve life imprisonment without the benefit of probation, parole, or suspension of sentence, he appealed. In his appeal, his appellate counsel asserted one assignment of error, and the defendant asserted eight *pro se* assignments of error. For the following reasons, we affirm the conviction in all respects.

## DISCUSSION OF THE RECORD

The charge against the defendant arises from the robbery and shooting of Richard Allen Cupstid on Roundtree Road in Concordia Parish, Louisiana, sometime around midnight between April 4 and April 5, 2005. Kenneth Barker and Katrina Hudson observed Mr. Cupstid laying next to the roadway as they traveled together to their midnight work shifts. They notified law enforcement authorities, and Mr. Cupstid was transported to a local facility for medical care. He died the next day. An autopsy established that Mr. Cupstid had injuries consistent with being struck by a vehicle and that he had been shot in the head with a .22 caliber weapon. It further established that the gunshot wound was the cause of death.

The law enforcement investigation discovered that Mr. Barker and Ms. Hudson had passed the location where they observed Mr. Cupstid's body two times within five minutes. After leaving for work, Mr. Barker realized that he had forgotten his wallet that morning, and they traversed Roundtree Road to retrieve it from his home. The first time they passed the point they ultimately saw the body, they observed a parked silver Mustang occupied by two men. After retrieving the wallet, they passed the location again. This time, they observed Mr. Cupstid's body, but the Mustang had left the scene.

The followup investigation established that Jason Short generally drove a silver Mustang. Based on this information, several deputies traveled to Mr. Short's residence, where they encountered Mr. Short and his girlfriend, Ginger Campbell. The deputies found a recently washed, silver Mustang parked behind the residence and a barbeque grill in which clothes and shoes were being burned. The Mustang's passenger side windshield had been smashed. During the investigation at Mr. Short's residence, the deputies recovered a .38 revolver. After observing the damage to the Mustang, some of the officers returned to the scene of the offense and recovered a piece of a windshield wiper which matched exactly the missing portion of the Mustang's windshield wiper on the passenger side.

When questioned concerning the accumulated evidence, Mr. Short informed the investigating officer that he had loaned the Mustang to the defendant and a friend named Bobby Beard. However, at trial, Mr. Beard presented a different story. According to Mr. Beard, he spent the afternoon of April 4, 2005 at Mr. Short's residence drinking alcohol with Mr. Short and Ms. Campbell. He testified that the defendant, Angela Mapp (the defendant's girlfriend), and Keysha Freeman (Ms. Mapp's niece) appeared at the residence at approximately 10:00 p.m., and shortly thereafter he went with the defendant and Mr. Short to his residence to smoke crack cocaine. Later, they returned to Mr. Short's residence.

Mr. Beard testified that while on the way to Mr. Short's residence, Mr. Short and the defendant discussed robbing a drug dealer they knew to obtain drugs and money. When he arrived at Mr. Short's residence the second time, he laid on the couch. While on the couch, he heard the defendant and Mr. Short discussing the acquisition of weapons. With regard to weapons, Mr. Beard testified that he knew

2

Mr. Short possessed a .22 rifle because Mr. Short had shown it to him a few days before the shooting. Soon after the weapons discussion, Mr. Short and the defendant left the residence. When the two men returned, approximately thirty minutes later, Mr. Beard overheard Mr. Short tell Ms. Campbell to wash the car. Sometime later Ms. Mapp arrived to pick up the defendant, and Mr. Beard obtained a ride with the couple.

Angela Mapp supported Mr. Beard's testimony concerning the events of the evening, stating that at approximately 3:00 a.m., she picked up the defendant and Mr. Beard at Mr. Short's residence. According to Ms. Mapp, while on the way to the defendant's residence that morning, he informed her that Mr. Short had shot someone beside the roadway. Specifically, he told her that he was a passenger in Mr. Short's 1999 silver Mustang, and while traveling along Roundtree Road, the two men observed Mr. Cupstid walking along the roadway. He further told her that Mr. Short stopped the vehicle and the two men beat and robbed Mr. Cupstid, leaving him laying on the side of the road; that after they left the scene, they realized they had only obtained $3.00 in the robbery; that they then turned around and returned to find Mr. Cupstid again walking along the roadway; and that Mr. Short then intentionally swerved the vehicle to strike Mr. Cupstid, throwing him into the windshield. According to Ms. Mapp, the defendant informed her that they again drove away, only to return a few moments later. This time when they returned, Mr. Cupstid was struggling down the road and approached the Mustang seeking help. According to the defendant's statement to Ms. Mapp, the .38 pistol was under the passenger seat, and the .22 rifle was in his lap. When Mr. Short told the defendant to give him a gun,

3

the defendant provided the .22 rifle. Mr. Short then shot Mr. Cupstid at point blank range.

Ms. Mapp testified that immediately upon returning to the defendant's residence, they quickly packed and left for Florida, picking up Ms. Freeman before they left the state. Ms. Freeman did not become aware of what had happened until the three arrived in Florida. When she was told of the shooting, she became so upset that she made arrangements to return to Louisiana. The day after Ms. Freeman left for Louisiana, Ms. Mapp and the defendant were apprehended by Florida law enforcement officials and were ultimately returned to Louisiana to stand trial. At the time of the defendant's trial, Ms. Mapp had entered a guilty plea to accessory after the fact to second degree murder and was awaiting sentencing.

**OPINION**

***Appellate Assignment of Error Number One***
***and***
***Pro Se Assignment of Error Number Eight***

Both of these assignments address the sufficiency of the evidence presented by the State of Louisiana (state). In the single assignment of error filed by his appellate counsel, the defendant asserts that the evidence was insufficient to convict him of second degree murder. The defendant makes the same argument in his *pro se* assignment, but suggests that the state's evidence was insufficient because it "relied on both the principal and conspiracy theories." We find no merit in either of these assignments of error.

The inquiry on appeal when the insufficiency of evidence is asserted is well settled in our jurisprudence.

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the

4

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982)*; State v. Moody*, 393 So.2d 1212 (La.1981). The role of the factfinder is to weigh the respective credibility of each witness. Therefore, the appellate court should not second guess the credibility determinations of the fact finder beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Miller*, 98-1873, p. 5 (La.App. 3 Cir. 10/13/99); 746 So.2d 118, 120, *writ denied*, 99-3259 (La. 5/5/00); 761 So.2d 541.

In arguing the insufficiency of the evidence, the defendant readily admits his knowing involvement in the robbery of Mr. Cupstid. Nonetheless, he asserts that the robbery was complete and accomplished before Mr. Short murdered Mr. Cupstid. That is to say, his participation in criminal activity ceased with the robbery; and it was Mr. Short who became enraged because the robbery netted only $3.00, and who then ran down and shot Mr. Cupstid.

With regard to the offense charged, La.R.S. 14:30.1(A) provides in pertinent part that:

> Second degree murder is the killing of a human being:
>
> (1) When the offender has a specific intent to kill or to inflict great bodily harm; or
>
> (2)(a) When the offender is engaged in the perpetration or attempted perpetration of . . . assault by drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery, . . . even though he has no intent to kill or to inflict great bodily harm.

Additionally, "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit

5

the crime, are principals." LSA-R.S. 14:24. However, "[o]nly those persons who knowingly participate in planning or executing a crime are principals to that crime. Mere presence and subsequent flight from a crime scene is not enough to make one a principal. An individual may be convicted only for the crimes for which he personally has the requisite intent." *State v. Wiley*, 03-884, pp. 13-14, (La.App. 5 Cir. 4/27/04), 880 So.2d 854, 863-64, *writ denied,* 04-1298 (La. 10/29/04), 885 So.2d 585 (footnote omitted). Citing *State v. Smith*, 98-2078, p. 7 (La.10/29/99), 748 So.2d 1139, 1143, the *Wiley* court further noted that

> [h]owever, under general principles of accessorial liability, "all parties [to a crime] are guilty for deviations from the common plan which are foreseeable consequences of carrying out the plan . . . Acting in concert, each man then [becomes] responsible not only for his own acts but for the acts of the other."

*Id.* at 864.

Applying these legal principles to the matter now before us, we note that there is no dispute that the defendant planned to rob someone. Additionally, the defendant and Mr. Short armed themselves with at least two weapons. Following the initial robbery and beating of the victim, they returned for the apparent purpose of imposing additional punishment on the defenseless man for the sole reason that he did not have more money for them to take. Still not being satisfied with the damages imposed, they returned a third time and Mr. Short shot him. The defendant furnished the weapon to Mr. Short and took no steps to extricate himself from the continuing series of events or to protect Mr. Cupstid. We conclude that in viewing the evidence in the light most favorable to the prosecution, the jury, as a rational trier of fact, could have found the essential elements of second degree murder proven beyond a reasonable doubt. *See Wiley*, 880 So.2d 854; *State v. Hayes*, 01-736 (La.App. 5 Cir. 12/26/01),

6

806 So.2d 816, *writ denied*, 02-263 (La. 10/25/02), 827 So.2d 1169; *State v. Hill,* 98-1087 (La.App. 5 Cir. 8/31/99), 742 So.2d 690, *writ denied,* 99-2848 (La. 3/24/00), 758 So.2d 147. In reaching this decision, we further note that the defendant was not charged with conspiracy to commit second degree murder.

### *Pro Se Assignment of Error Number One*

In this assignment of error, the defendant asserts that evidence of other crimes introduced at trial violated the prohibition found in La.Code Evid. art. 404(B) and was prejudicial to his defense. Specifically, he refers to evidence related to his use of crack cocaine, solicitation for prostitution, shoplifting, and criminal conspiracy. The defendant argues that the jury convicted him of second degree murder, not because he committed the offense, but because he was a bad man.

In considering this assignment of error, we initially note that the state did not charge the defendant with any of the above recited offenses, although there was testimony concerning each. Mr. Beard testified as to the conversation he overheard between the defendant and Mr. Short concerning arming themselves to commit a robbery. He also testified that he used crack cocaine with the defendant and Mr. Short on the evening of the murder. Additionally, Ms. Mapp testified concerning the use of crack cocaine as well as prostituting her niece in Florida and shoplifting in Florida in order to obtain food and money.

Louisiana Code of Evidence Article 404(B)(1) provides:

> **Other crimes, wrong, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends

7

to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceedings.

In *State v. Colomb*, 98-2813, pp. 3-4 (La.10/1/99), 747 So.2d 1074, 1075-76, the supreme court stated:

> This Court has long approved of the introduction of other crimes evidence, both under the provisions of former R.S. 15:448 relating to *res gestae* evidence and as a matter of integral act evidence under La.C.E. art. 404(B), "when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." *State v. Brewington*, 601 So.2d 656, 657 (La.1992). This doctrine encompasses "not only spontaneous utterances and declarations made before and after commission of the crime but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances." *State v. Molinario*, 383 So.2d 345, 350 (La.1980). We have required a close connexity between the charged and uncharged conduct to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *State v. Haarala*, 398 So.2d 1093, 1098 (La.1981) (emphasis added); *see also* 1 *McCormick on Evidence*, § 190, p. 799 (4th ed., John William Strong, ed., 1992) (other crimes evidence may be admissible "[t]o complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.") (footnote omitted). The *res geaste* [sic] or integral act doctrine thus "reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." *Old Chief v. United States*, 519 U.S. 172, 186, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997). The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." *Id*.

While finding no merit in the defendant's argument with regard to this

assignment of error, we further note that the defendant did not object at trial to these

statements of other crimes. Thus, he is precluded from raising this claim on appeal. La.Code Crim.P. art. 841.

### *Pro Se Assignment of Error Number Two*

In this assignment of error, the defendant asserts that the trial court erred in allowing the state to introduce statements made by Mr. Short as reported by various witnesses. Specifically, the defendant asserts that these statements purported to show a conspiracy and were not admissible without first establishing a prima facie case of conspiracy.

The defendant's argument as to this assignment of error is premised on the misconception that he was charged with a criminal conspiracy. In support of this argument, he directs this court to La.Code Evid. art. 801(D)(3)(b), which provides that a statement is not hearsay if it is made by "a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established."

Not only was the defendant not charged with a criminal conspiracy, but he does not direct us to any particular statement as being inadmissible and at no time during any witnesses' testimony did he object to any reference to statements made by Mr. Short. Thus, he did not preserve the assignment of error and cannot now seek appellate review of those statements. La.Code Crim.P. art. 841. We find no merit in this assignment of error.

### *Pro Se Assignment of Error Number Three*

Still under the apparent misconception that he was charged with conspiracy to commit second degree murder, the defendant argues in this assignment of error that

the trial court erred in failing to charge the jury concerning the law of conspiracy. Again, as previously noted, the defendant was not charged with conspiracy, and conspiracy to commit second degree murder is not a responsive verdict to second degree murder. La.Code Crim.P. art. 814(A)(3). That being the case, there was no reason for the trial court to give such an instruction. We find no merit in this assignment of error.

### Pro Se Assignment of Error Number Four

In this assignment of error, the defendant asserts that he was denied due process of law because he was required to defend himself against the charges of criminal conspiracy, coercion to commit prostitution, and use and possession of crack cocaine without proper notice. For all the reasons stated in response to the assignments set forth above, we find no merit in this assignment of error.

### Pro Se Assignment of Error Number Five

In this assignment of error, the defendant asserts that the trial court erred in allowing hearsay statements made by Mr. Short to be introduced as evidence. For all the reasons stated in response to the assignments set forth above, we find no merit in this assignment of error.

### Pro Se Assignment of Error Number Six

Citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), the defendant asserts in this assignment of error that his constitutional right to confront Mr. Short with regard to his statement as testified to by a police investigator was violated. Although he does not specify which detective's testimony he is referring to, we find only one statement by an investigator which related to Mr. Short's out of court utterances. Jimmy Darden, the lead investigator with the Concordia Parish

10

Sheriff's Office, testified that Mr. Short told him the defendant and Mr. Beard had borrowed his Mustang and returned it with a shattered window.

As was the case with the other complaints, the defendant did not object when the testimony was offered. That being the case, he did not preserve the objection and cannot now raise it on appeal. La.Code Crim.P. art. 841.

### Pro Se Assignment of Error Number Seven

In this assignment of error, the defendant asserts that the state impermissibly bolstered the credibility of its own witnesses by questioning them concerning their plea of accessory after the fact to second degree murder. This assignment addresses the testimony of Angela Mapp and Ginger Campbell, both of whom testified that they had pled guilty to accessory after the fact before the defendant's trial and were awaiting sentencing. This testimony was in response to questions from the state. However, the defendant does not explain how asking the witnesses whether they were convicted of an offense pertaining to the current matter was an impermissible act of bolstering. Moreover, in both instances, there were no objections made to the questions and answers. Accordingly, the issues cannot be raised on appeal. La.Code Crim.P. art. 841.

### Errors Patent

As required by La.Code Crim.P. art. 920, we have reviewed this record for errors patent on the surface of the record. In doing so, we find one error patent that requires addressing.

In sentencing the defendant, the trial court advised the defendant that he had two years from the "date of your sentence" to file for post-conviction relief.

11

Louisiana Code of Criminal Procedure Article 930.8 states that a defendant has two years from the finality of his conviction and sentence to seek post-conviction relief. We remand this matter to the trial court with instructions to inform the defendant of the correct provisions of La.Code Crim.P. art. 930.8.

## DISPOSITION

We affirm the defendant's conviction in all respects. We remand the matter to the trial court and instruct the trial court to inform the defendant of the correct provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within thirty days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of these proceedings.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2-16.3.