NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**KA 14-745**

**STATE OF LOUISIANA**

**VERSUS**

**TRACY HARRIS, SR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 55562
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED.**

**Michael Harson**
**District Attorney**
**Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
　　**State of Louisiana**

**Jermaine Demetrie Williams**
**1313 Lafayette Street**
**Lafayette, LA 70501-6841**
**(337) 235-3989**
**COUNSEL FOR DEFENDANT/APPELLANT:**
　　**Tracy Harris, Sr.**

**Michael L. Barras**
**P. O. Box 11340**
**New Iberia, LA 70562-1340**
**(337) 369-6400**
**COUNSEL FOR APPELLEE:**
　　**State of Louisiana**

**EZELL, Judge.**

Defendant, Tracy Harris, Sr., was charged on August 16, 2012, by a bill of information under lower court docket number 55562, with armed robbery, a violation of La.R.S. 14:64, possession of a concealed weapon by a convicted felon, a violation of La.R.S. 14:95.1, and aggravated second degree battery, a violation of La.R.S. 14:34.7. A jury trial commenced on May 21, 2013, following which Defendant was found guilty as charged on all counts.

Under the same lower court docket number, the State filed a "Third Felony Habitual Offender Bill of Information." On October 3, 2013, Defendant was adjudicated a third felony offender pursuant to La.R.S. 15:529.1 and sentenced to life imprisonment on the armed robbery and the aggravated second degree battery convictions and twenty years on the conviction for possession of a concealed weapon by a convicted felon. All the sentences were ordered to be served without the benefit of parole, probation, or suspension of sentence and to run concurrently. While Defendant objected to the sentences without stating grounds for the objection, he did not file a written motion to reconsider the sentences.

Defendant has perfected a timely appeal wherein he argues that there was insufficient evidence to support the verdicts of armed robbery and aggravated second degree battery. For the following reasons, we find the evidence was sufficient to support the jury's verdicts on all of the charges.

## FACTS

On the morning of June 29, 2012, Defendant entered the convenience store, J.B. Express, took money and cigarettes from Diana Pham at knifepoint, and injured her severely.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

Defendant argues that there was insufficient evidence presented to support the jury's verdicts of armed robbery and aggravated second degree battery. While Defendant admitted he beat Ms. Pham, he denied he had a knife or robbed the store.

In *State v. Touchet,* 04-1027, pp. 1-2 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 902 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979)), this court reiterated the well-established jurisprudential directive that the critical inquiry when reviewing an issue regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." The fact finder is charged with evaluating the credibility of the witnesses, so that "the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard." *Id.*

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore,

the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King,* 436 So.2d 559, citing *State v. Richardson,* 425 So.2d 1228 (La.1983).

Furthermore, in order for the State to obtain a conviction, it must prove all the elements of the crime beyond a reasonable doubt; accordingly, the record must reflect that the State has satisfied this burden of proof. *State v. Boyance,* 05-1068 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, *writ denie*d, 06-1285 (La. 11/22/06), 942 So.2d 553.

Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A). Aggravated second degree battery is a "battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury." La.R.S. 14:34.7(A). Finally, Defendant was also convicted of possession of a concealed weapon by a convicted felon, which, in pertinent part, provides: "It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary . . . to possess a firearm or carry a concealed weapon." La.R.S. 14:95.1(A).

Defendant's argument is based primarily on the fact that Ms. Pham did not tell anyone that she was robbed or cut with a knife until later, despite her testimony at trial that she did tell the police and the emergency room doctor that Defendant robbed her of money at knife point. He contends that she made up the knife and the robbery after she had time to think about it.

At trial, Ms. Pham testified that she and her husband, John Nguyen, owned and operated the convenience store and gas station, J.B. Express, in Abbeville.

3

With the aid of the surveillance DVDs, Ms. Pham described the events of the morning. She stated Defendant came into the store several times in the morning. He came in at 9:43 a.m. and asked about the price of Newport cigarettes and a bottle of whiskey. He told her his girlfriend was going to pay for the items. He leaned out the door and yelled for someone to come in and pay. He then said his girlfriend would not pay for the items and left the store. He came into the store again at 9:46 a.m. Ms. Pham stated that he asked someone for money, but when he was refused, he left the store again. At 9:52 a.m., Defendant came into the store and inquired about the price of Newport cigarettes and a beer. He again said his girlfriend was going to pay for the items and went outside. At 10:15 a.m., Defendant came back into the store with his shirt draped over his head. Ms. Pham told him to take the shirt off his head. She said after he did not respond, she told him she was going to call the police. When she picked up her cell phone, he leaped over the counter, began to beat her, and stabbed at her face with a knife. He threw her down, kicked her, pulled her up by the hair, and demanded that she open the cash register. When she complied and attempted to escape, he grabbed her by the hair again and demanded she open the second cash register. At trial, she stated he took her cell phone and about thirty dollars. During her interview with the police, Ms. Pham stated she was in severe pain because of the beating inflicted on her. She said she thought he was trying to stab her in the eyes to blind her.

Marty Joseph Hebert testified that on the morning of June 29, 2012, while driving down the road, he saw a woman run out of the store, crying and pointing down the street. He drove by but then turned around because her distress was apparent. He stated that she was extremely distraught. Her face was swollen, and she was bleeding from the forehead and arm and crying, "'He hit me. He hit me.'"

4

He took her back into the store, called 911 and an ambulance, and stayed with her until the police arrived. Although she never told him that she had been robbed or that the robber had a knife, he stated she was hysterical, and he never asked.

David Hardy, an officer with the Abbeville Police Department, testified he was called to the scene. He found a pack of Newport cigarettes on the countertop and two ten dollar bills on the floor in front of the counter. The area around the counter was thoroughly trashed, with both cash registers opened and one lying on the floor behind the counter. The officer testified that, when he arrived at the scene, he was advised by Lieutenant Broussard that a robbery had taken place. Officer Hardy did not talk to the victim at the time because she was being treated by the paramedics and was then transported to the hospital. He stated that later he was made aware of the fact that a knife was used during the robbery. The officer testified that when Defendant was apprehended, shortly after the incident, he had on his person a five dollar bill, one unopened pack of Newport cigarettes and one opened pack of Newport cigarettes, but no knife.

Jason Hebert, a lieutenant with the Abbeville Police Department, testified that he recognized Defendant from the store surveillance video. He further noted an object in Defendant's back pocket seen on the surveillance video that could have been the handle of a knife. He stated that, when he saw the victim, she had "little nicks on her body, on her arms that I remember; maybe on her face. And her left arm, she had a pretty good laceration." Defendant was arrested an hour later approximately a block and a half away from the store. The lieutenant agreed that Ms. Pham had originally told him that the robber had taken about forty dollars rather than the thirty dollars she testified to at trial.

Sergeant Ryan Bouttee, with the Abbeville Police Department, interviewed the victim three days after the incident. On cross-examination, he agreed that the victim told him, "'I really don't know how much money he took. When the guy was punching me, he was also sticking me with a knife.'"

Doctor Jeffery Tanita, an emergency room doctor, testified that the victim's injuries were consistent with being poked and cut by a knife. He stated he did not ask her about the crime and did not recall if she told him about being cut by a knife. Although he did not include on the medical form that she was stabbed or cut with a knife, he did order a tetanus shot, which was something he would have done had he been aware that there was a knife involved.

While Defendant did not testify at trial, the jury viewed his interview with the police wherein he admitted he beat her up and took a pack of cigarettes without paying. He claimed he just snapped when she called him the "N" word three times. He told the police he did not have a knife. He challenged them to find the knife. He stated that he knew better, being a career criminal after all.

In *Boyance*, 924 So.2d 437, this court examined a very similar complaint wherein the defendant was convicted of armed robbery and first degree robbery. The defendant, who robbed two convenience stores while using a knife, claimed the State did not prove he actually used the knife. He claimed the victims were more frightened of him rather than a weapon that he merely had in his possession. Concerning the armed robbery allegation, this court noted:

> Although the defendant did not brandish or threaten Ms. Tovar with the knife, her testimony indicated that she was frightened by the mere presence of the knife. Ms. Tovar testified that she was within a few feet of the defendant and when she opened the register, the defendant was right behind her. "When [the] defendant creates an atmosphere of intimidation prompting the victim to reasonably react with fear for his life, an armed robbery conviction is justified." *State*

6

*v. Cotton*, 94-384, p. 3 (La.App. 5 Cir. 11/16/94), 646 So.2d 1144, 1146. Given Ms. Tovar's testimony and the surveillance videotape which was entered into evidence, the jury was free to conclude that the defendant was armed with a dangerous weapon and that the defendant created an atmosphere of intimidation. In short, we find that in viewing the evidence most favorable to the prosecution, the record supports the determination that the essential elements of armed robbery were proven beyond a reasonable doubt.

*Id.* at 441-42 (alteration in original).

Concerning the first degree robbery offense, this court noted:

In *State v. Fortune*, 608 So.2d 148, 149 (La.1992), the Louisiana Supreme Court held that La.R.S. 14:64.1(A) "has both objective and subjective components. It requires the state to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances." A conviction for first degree robbery may be supported by direct testimony from the victim that he believed the defendant was armed. *Id.*

Ms. Guidry testified that she was intimidated by the presence of the defendant, and she was fearful of being harmed. While the object the defendant held in his hand was not clearly discernible, Ms. Guidry perceived it to be a weapon that could harm her. In *State v. Page*, 02-689, p. 16 (La.App. 5 Cir. 1/28/03), 837 So.2d 165, 176, *writ denied*, 03-0591 (La.11/7/03), 857 So.2d 517, the court held that "[n]o weapon need ever be seen by the victim, or witnesses, or recovered by the police for the trier of fact to be justified in finding that defendant was armed with a dangerous weapon." While the jury did not find sufficient evidence of an armed robbery, there was sufficient evidence for the jury to find the element of intimidation with what Ms. Guidry reasonably believed was a dangerous weapon, and the jury correctly found the defendant guilty of the responsive verdict of first degree robbery.

After reviewing the surveillance tape and examining Ms. Guidry's testimony, we find that the record supports the jury's determination that Ms. Guidry's belief that the defendant was armed with a dangerous weapon was reasonable under the circumstances. Accordingly, we find that the State presented sufficient evidence to establish the elements of first degree armed robbery.

*Id.* at 442 (alteration in original).

In this case, the evidence submitted by the State was sufficient to sustain the jury's determination that Defendant was guilty of armed robbery and aggravated

7

second degree battery beyond a reasonable doubt. The surveillance video showed Defendant standing with his back to the camera. An object was sticking out of his back right pocket. Defendant raised his hands and then suddenly, while grabbing the object out of his back pocket, leaped over the counter. Whether it was the handle of a comb, a screwdriver, or just a stick, the pictures and testimonies established scrapes and pokes on the victim's face and chest and one large cut on the back of an arm. Once Defendant was over the counter, the action became a bit obscured. However, he can be seen roughly pushing Ms. Pham up against one of the cash registers, then throwing her down. Furthermore, he admitted he took one pack of cigarettes without paying.

The jury heard all of the testimony, including the inconsistencies in Ms. Pham's testimony. Ms. Pham testified that Defendant injured her with a knife. Obviously, the jury chose to believe Ms. Pham. There was sufficient evidence for the jury's determination that Defendant committed armed robbery and aggravated second degree battery. This assignment lacks merit.

### DECREE

For the reasons set forth, this court affirms the convictions.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.