# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-1473

**STATE OF LOUISIANA**

**VERSUS**

**TIMOTHY G. FALCUCCI**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 105807
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and James T. Genovese, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**Michael Harson**
**District Attorney, 15th Judicial District Court**
**Michelle S. Billeaud**
**Assistant District Attorney, 15th Judicial District Court**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**Telephone: (337) 232-5170**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**Mark O. Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**Telephone: (318) 572-5693**
**COUNSEL FOR:**
    **Defendant/Appellant - Timothy G. Falcucci**

**THIBODEAUX, Chief Judge.**

The Defendant, Thomas G. Falcucci, appeals his jury conviction of sexual battery, a violation of La.R.S. 14:43.1, on the basis of insufficiency of the evidence. The Defendant also asserts that his constitutional right to a complete record on appeal was violated by the trial court's failure to order the recording and transcription of the hearing held during voir dire on his request to "back-strike" a juror. His claims are meritless and we, therefore, affirm his conviction.

## ISSUE

The sole issue is whether the evidence, viewed in a light most favorable to the prosecution, is sufficient to support a conviction of sexual battery.

## FACTS

On December 3, 2004, the victim, an eighteen-year-old female, went to a hospital following an automobile accident, and diagnostic x-rays were ordered by the emergency room physician. The Defendant was the x-ray technician on duty at that time. During the preparation of the victim for a lumbar x-ray, the Defendant informed the victim that he needed to touch her genitals and insert fingers into her vagina. Believing that the Defendant needed to touch her in that manner to complete the x-ray process, the victim complied. The victim became inquisitive of the necessity of such touching after noticing that the Defendant was not wearing gloves when he touched and inserted his fingers into her vagina. The victim eventually discussed the incident with her parents, the incident was reported to the hospital, and the Defendant was ultimately arrested.

**Sufficiency of the Evidence**

The Defendant argues that the evidence is insufficient to support a conviction of sexual battery. More specifically, the Defendant maintains that the State failed to prove that the alleged touching was done without the victim's consent. The Defendant contends that the State did not ask the victim whether or not the victim consented because, viewed in the light most favorable to the State, the testimony shows that the victim consented to the touching. The Defendant further asserts that if the State's argument is that the victim consented to the touching of her genitals because she was misled by the Defendant into believing that his actions were proper medical procedure, then the conviction must be overturned for insufficient evidence.

The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Sexual battery is defined in La.R.S. 14:43.1, which reads in pertinent part:

> A. Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, . . .
>
> (1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; . . .

The only element of the offense which the Defendant challenges is the victim's consent. The Defendant maintains that "[t]he legislature has not created any exception to allow for a conviction for sexual battery where there was consent, but the consent was obtained by fraud, artifice or pretense." The Defendant argues that for this court to affirm his conviction such an exception would need to be judicially created. Further, the Defendant contends that such an exception would expose health care providers to the risk of convictions for sexual battery by a patient who first consented to the touching of the genitals during a medical exam, but later became unhappy with the doctor's technique.

Consent is defined in Blacks Law Dictionary 300 (7th ed. 1999) as an "[a]greement, approval, or permission as to some act or purpose, esp. given voluntarily by a competent person." The factual circumstances militate overwhelmingly against valid consent by the victim.

The Defendant instructed the victim to remove clothing for the procedure and invaded the victim's genitals with his hand and fingers for no known medical reason. The unrefuted testimony of Mr. Cory James "Jim" Thibodeaux, a certified x-ray technician; Ms. Linda Tate, a nursing supervisor; and Mr. David Beaugh, the clinical coordinator of the hospital's radiology department, indicates that neither the removal of the victim's pants and underwear nor the touching of her genitals was a

3

necessary part of the medical procedure that the Defendant was expected to perform as an x-ray technician. Mr. Thibodeaux stated that clothing is fine during the procedure as long as there is no metal covering the area being investigated. When shown the pants the victim was wearing when she was taken to be x-rayed, he testified that there was nothing on them that would leave an artifact. Thus, she would not need to remove them. Mr. Thibodeaux concluded his testimony by stating that he never needs to put his finger into a woman's vagina or go anywhere near the vaginal area to manipulate or move her for an x-ray.

Mr. Beaugh stated that he has performed thousands of lumbar spinal x-rays during his twenty-one years in the radiology business and that he has never heard of putting a finger into the vagina to manipulate the body and align the x-ray machine for that particular procedure. He added that he has never seen it or read it in a book, and he has never done that to take an x-ray. According to Mr. Beaugh, it is not necessary to go anywhere near the vaginal area to get a lumbar spine x-ray.

It was not necessary for the victim to remove her clothes, nor did the procedure ever necessitate the touching of the victim's genitals. Clearly, the Defendant did not properly perform the lumbar spine x-ray. The testimony of the victim indicates that she did not voluntarily consent to, agree to, approve of, or give permission to the Defendant to sexually violate her during the performance of the lumbar spinal x-ray.

The victim testified that she took it for granted that the Defendant's actions were part of the procedure and that she was supposed to be able to trust him. She thought he was just doing his job. The victim explained that she was raised to trust medical professionals, that she did not know the difference between an x-ray

technician and a physician at that time, that she was only eighteen years old, and that she had just moved out of her parents' home.

During the victim's cross-examination, the defense attempted to discredit the victim's testimony by comparing her testimony at trial to her testimony in a deposition taken in a civil matter filed against both the hospital and the Defendant. However, the discrepancies were very minor and had little to do with her consent to the lumbar x-ray procedure. The Defendant also focused on the victim's delay in reporting the incident until the following day. The victim, however, consistently testified that she did not initially question his actions, trusting him as a medical professional. After taking a little time to process what had transpired that evening, the eighteen-year-old victim spoke with her mother the next morning, less than twenty-four hours after the incident. This delay was a very small window of time for a woman her age. Within a twenty-four-hour period, all of the pertinent hospital officials had been advised of the incident. Further, she promptly reported to the Lafayette police station less than forty-eight hours following the alleged incident.

The victim consented to a ***properly*** conducted lumbar spinal x-ray which, according to the testimony at trial, did not require the touching of the victim's genitals. Although she complied with the Defendant's instructions, believing that his actions were necessary for the procedure, she clearly did not have the requisite knowledge of the proper procedure. As such, her lack of knowledge and the Defendant's fraudulent representations vitiated any "implied" consent on the victim's part when she did not question the Defendant during the procedure or rush to accuse him that evening of improperly touching her. Accordingly, the Defendant has not shown that the victim consented to the x-ray procedure as performed by the Defendant.

## Supplemental Assignment of Error

The Defendant argues that the trial court's failure to record and transcribe a pre-trial hearing on the Defendant's request to "back-strike" a juror during voir dire violated his constitutional right to have a complete record on appeal. We disagree. The record indicates that on December 17, 2007, the Defendant filed a Motion to Suspend Briefing and to Supplement the Record, seeking an order from this court to instruct the trial court to supplement the record with the transcript of the October 17, 2006 hearing and ruling on the Defendant's right to "back-strike," or to certify that a transcript of the hearing was not available.

In response to the Defendant's motion, an order was issued by this court on December 19, 2007, instructing the court reporter to transcribe the portion of jury selection on October 17, 2006, that corresponded to the following excerpt from the minutes:

> DEFENSE COUNSEL QUESTIONED THE COURT AS TO THE PROCEDURE FOR BACKSTRIKING AND PRESENTED ARGUMENTS. AFTER GIVING REASONS, THE COURT INDICATED THAT BACKSTRIKING WILL NOT BE ALLOWED.

On January 17, 2008, a supplemental record was received by this court. Contained therein is a certificate from a court reporter, Joan B. Molbert, C.C.R., indicating that she had no notes or tape recording of the excerpt that was requested.

In his supplemental brief, the Defendant contends that without a complete record, this court cannot fully review the record for constitutional or patent errors. According to the Defendant, the missing transcript involved a hearing on defense counsel's request to "back-strike" prospective jurors tentatively on the panel. The Defendant asserts that La.Code Crim.P. art. 795 provides for "back-striking" or strike backs of prospective jurors by a defendant and that a juror temporarily accepted

6

and sworn pursuant to La.Code Crim.P. art. 788 may still be challenged peremptorily prior to the swearing of the panel in accordance with La.Code Crim.P. art. 790, citing *State v. Watts*, 579 So.2d 931 (La.1991) and *State v. Taylor*, 93-2201 (La. 2/28/96), 669 So.2d 364. As such, the Defendant contends that the right to peremptorily exempt jurors from the panel was critical to his case when faced with "thin and contradictory evidence."

The State, on the other hand, maintains that the record is complete, containing the transcription of the entire voir dire process. Additionally, the State asserts that both parties had used all of their respective peremptory challenges with the first panel of prospective jurors and that five jurors were selected from that panel. Thus, the sixth and alternate jurors needed to be selected from the second panel. The State maintains that since neither side had any remaining peremptory challenges, the next prospective juror would be seated as a juror unless successfully challenged for cause by either party. During the voir dire process of the second panel, the State notes that the Defendant did not object to the trial court's prior determination of no "back-strikes," nor did the Defendant request or move to allow "back-strikes." Finally, the State contends that the only juror that the Defendant was not happy with was Trooper Flynn, the last juror seated. The State avers that at that time, the Defendant had no remaining peremptory challenges and "back-striking" would have been impossible.

With regard to the Defendant's complaint that the record is void of a hearing on "back-striking," the State contends that the Defendant made only an inquiry regarding "back-striking," as indicated in the minutes. More specifically, the State explains that after both parties questioned the potential jurors, counsel for both parties joined the trial judge in the jury deliberation room to go through challenges.

7

After allowing challenges for cause, but prior to beginning the jury selection process, the Defendant inquired as to the trial court's position on "back-striking." The State asserts that the Defendant did not move to "back-strike" and that there was no argument by either party. The trial judge simply advised that he was not inclined to allow "back-striking."

According to the State, neither party objected, and both sides accepted the trial court's position on the issue, which is supported by the minutes. There is no mention of either side objecting to the trial court's ruling. Because the Defendant failed to object to the trial court's ruling regarding "back-striking" at the time the decision was made, or at any time during the voir dire process or trial, the State argues that the alleged error was waived pursuant to La.Code Crim.P. art. 841. The State asserts that without an objection from either party the trial court had no reason to review or revisit its decision regarding "back-striking." Finally, the State maintains that although the Defendant has a right to employ "back-strikes" under La.Code Crim.P. art. 795(B)(1), the erroneous denial of that right is subject to the harmless error analysis.

The minutes in the record of October 17, 2006 reflect that prior to voir dire, the trial court was presented with motions in limine by both the State and the Defendant, and that following arguments, both motions were granted. No other motions were taken up at that time. Next, the record indicates that the twenty-one prospective jurors were seated and questioned. Next, outside the presence of the jury, the trial court considered the challenges for cause wherein the State challenged four jurors, three of which were granted and one denied.

The transcript indicates that a brief recess was taken. The minute entry at issue was recorded after the State's challenges for cause. However, the minutes do

8

not indicate whether the Defendant's question regarding "back-striking" occurred before or after the parties began making peremptory challenges as there are no minute entries regarding the peremptory challenges that correspond to the transcript. The transcript shows that following a recess, the parties began making peremptory challenges until five jurors were chosen. There is, however, no record of the discussion regarding "back-striking" at any time during the challenging of the prospective jurors.

The State is correct in its assertion that both parties had used all of their peremptory challenges at that time and that two more jurors were still needed. Also, there were no objections by either party at that point as to any of the jurors selected or to any of the trial court's rulings regarding challenges for cause.

According to the transcript and minutes, the jurors were returned to the courtroom, and the trial court announced the names of the five jurors chosen. The selected jurors were sworn in and then escorted out of the court room. The trial court addressed the remaining jury panel and then recessed for lunch. After the lunch recess, the second panel of potential jurors was seated and questioned. The prospective jurors were removed from the courtroom, and the Defendant asserted the first challenge for cause against juror Flynn, a state trooper. Mr. Flynn was returned to the courtroom for additional questioning regarding his relationship with a State's witness, a detective involved in the case. The trial court then denied the Defendant's challenge for cause, and the Defendant noted his objection for the record to the trial court's ruling. Thus, Mr. Flynn became the sixth member of the jury, and the alternate chosen was the next person on the list that was not challenged. The minutes and the transcript indicate that there were no other objections made by the Defendant during voir dire.

In support of his argument, the Defendant refers this court to *State v. Pinion*, 06-2346 (La. 10/26/07), 968 So.2d 131, where the supreme court held that the court reporter's failure to adequately record the bench conferences in which the state and defendant made challenges for cause and exercised their peremptory challenges prejudiced the defendant's appeal. This case, however, is distinguishable from *Pinion*. Here, the court reporter recorded the entire voir dire with the exception of the portion where the Defendant inquires about the trial court's procedure for "back-striking." Thus, the omission does not demonstrate prejudice as in *Pinion*. But the minutes in question do not indicate that the Defendant was exercising a challenge for cause or a peremptory challenge. Thus, there is no challenge omitted from the transcript. Further, the transcript of the voir dire thoroughly covers both the State and the Defendant's challenges for cause and peremptory challenges, and that coverage is not disputed by the Defendant.

In a recent case, *State v. Williams*, 06-1327 (La.App. 4 Cir. 1/23/08), ___ So.2d ___, the fourth circuit held that the defendant was not prejudiced on appeal by the lack of transcription of in-chamber portions of the jury voir dire in the record. The court reasoned that the record contained detailed jury sheets that indicated the peremptory strikes for each party as well as the jurors who ultimately served on the jury or whom the defendant had to excuse peremptorily. Likewise, in this case, the Defendant has not shown how the unrecorded portion of the in-chamber conversation between defense counsel and the trial judge during voir dire has prejudiced his case on appeal. There is no indication in the voir dire transcript or in the record that the Defendant moved that the trial court allow "back-striking" or attempted to "back-strike" a particular juror. Additionally, there is no indication in the minutes or transcript that the Defendant objected to the trial court's inclination to disallow

10

"back-striking." Simply put, the Defendant did not reserve his right to appeal the trial court's decision to disallow "back-striking" by objecting, as required by La.Code Crim.P. art. 841, despite the Defendant's assertion that jury selection was critical to his case. Further, had the Defendant filed a motion asking the trial court to allow "back-striking," and the trial court denied the motion, then the Defendant would be required to object at the time of the trial court's ruling to preserve his right of review on appeal.

There is no dispute that the voir dire transcript does not include any discussion with regard to "back-striking." However, as noted above, the minutes indicate that the Defendant *questioned* the trial court as to the procedure for "back-striking," but did not file a *motion* asking that the trial court allow "back-striking." Also, there is no formal motion to "back-strike" in the record, nor does the record reflect that the Defendant sought to challenge any particular juror using a "back-strike." Additionally, the minutes do not reflect that the Defendant objected to the trial court's decision to disallow "back-striking" at the time the discussion was had, nor does the voir dire transcript reflect an objection with regard to the prohibition of "back-striking" at any time during the voir dire process. Accordingly, the Defendant was not prejudiced by the unrecorded portion of the transcript. This assignment of error is without merit.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find one error patent.

The court minutes do not reflect that the Defendant was properly advised of the time limitation for filing an application for post-conviction relief. In reviewing

11

the sentencing transcript to determine whether the Defendant was advised of this information, we conclude that the Defendant was incorrectly advised by the trial court of the time limitation as follows:

> Pursuant to Louisiana Code of Criminal Procedure Article 930.8, no Application for Post-Conviction Relief shall be included if it is done out of time of appeal. So you shall - - you must do so within a two year period of time of the judgment of conviction and then the sentences become final.

According to La.Code Crim.P. art. 930.8, an application for post-conviction relief must be filed within two years after the judgment of conviction and sentence has become final. Thus, the trial court is directed to inform the Defendant of the correct provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings. *State v. Roe,* 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## CONCLUSION

The Defendant's conviction is affirmed. The trial court is instructed to inform the Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of these proceedings.

**AFFIRMED WITH INSTRUCTIONS**.