DO NOT PUBLISH

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
10-301

STATE OF LOUISIANA

VERSUS

MARCUS COLEMAN

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 18915-04
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE
**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, J. David Painter, and David E. Chatelain[*], Judges.

**AFFIRMED.**

Peggy J. Sullivan
Louisiana Appellate Project
P.O. Box 2806
Monroe, LA  71207-2806
Counsel for Defendant-Appellant:
        Marcus Coleman

John F. Derosier
District Attorney
David L. Kimball
Carla S. Sigler
Assistant District Attorneys
1020 Ryan St.
Lake Charles, LA  70601
Counsel for Appellee:
        State of Louisiana

---

[*] David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court and Judge Pro Tempore.

**PAINTER, Judge**.

Defendant appeals his conviction for armed robbery with a firearm. For the following reasons, we affirm.

## FACTS

Defendant is alleged to have taken Jill Dozart's purse at gunpoint as she walked toward a restaurant where she was meeting friends.

On November 16, 2005, Defendant, Marcus Coleman, was charged with armed robbery. The charge was amended on July 26, 2006, to armed robbery with a firearm, a violation of La.R.S. 14:64 and 14:64.3. Following a trial on the merits, Defendant was found guilty as charged on April 3, 2007. Dfendant was adjudicated a fourth felony offender on October 17, 2007, and was sentenced to ninety-nine years at hard labor, without benefit of probation or suspension of sentence. Defendant did not file a motion to reconsider sentence.

Defendant is now before this court on appeal, asserting that the evidence was insufficient to support his conviction for armed robbery with a firearm. Defendant also complains that the use of hearsay testimony as to a crucial fact in evidence was a violation of the confrontation clause.

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find only one possible error patent that results in an illegally lenient sentence. The trial court's failure to impose the sentence without the benefit of parole renders the habitual

1

offender sentence illegally lenient. However, this court does not recognize an illegally lenient sentence unless it is raised as error, and Defendant has not done so.

*Sufficiency of the Evidence*

Defendant argues that the evidence adduced at trial was insufficient to support the conviction of armed robbery with a firearm. The analysis for a claim of insufficient evidence is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Armed robbery is defined in La.R.S. 14:64(A) as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." An additional penalty is imposed when the dangerous weapon used in the commission of armed robbery is a firearm. La.R.S. 14:64.3.

On appeal, Defendant only challenges his identity as the perpetrator. Defendant asserts that the only evidence linking him to the victim's attack was the hearsay testimony of Detective David Rupf regarding a phone call made from the

2

victim's cellular phone to a residence Defendant sometimes occupied and the victim's testimony that she recognized him when she caught a brief glance of him on television.

At trial, the victim, Jill Dozart, testified that as she was walking toward the restaurant, a man ran up behind her and grabbed her. Ms. Dozart began screaming and tried to escape. Meanwhile, the man told her he was going to shoot her if she did not shut up. She continued to struggle until she tired. The man then instructed her to walk away from the restaurant, showing her a gun. Ms. Dozart stated that she thought the man was going to kill her and pleaded with him not to do it. She also offered him $40.00 cash that she had recently withdrawn from the bank.

Ms. Dozart testified that cars were going by as they were walking. Eventually, a car stopped, and Ms. Dozart initially believed that the occupants of the vehicle were attempting to save her. Instead, the occupants yelled at the perpetrator to get in the car. As Ms. Dozart began to struggle again, the man released her and got in the car with her purse. As the car drove off, Ms. Dozart could see the license and memorized the number. She also noted that the vehicle was a gray Saturn.

Ms. Dozart identified Defendant at trial to be the person that grabbed her that evening. She indicated, however, that he looked different at trial than he did at the time of the offense. Ms. Dozart explained that Defendant's hair was longer with "pieces" all over, like little braids or dreadlocks.

Ms. Dozart also testified that, some time after the offense and before Defendant was arrested, she saw a picture of Defendant on television. When she saw Defendant's picture, she recognized him and told her husband that Defendant was the

3

man that had robbed her. According to Ms. Dozart, she had never been shown a photo of Defendant or a picture lineup featuring Defendant.

Ms. Dozart's husband, Jeff Dozart, testified about the evening his wife saw Defendant's photo on the television news. Mr. Dozart explained that he was watching the news but was not paying much attention when his wife instructed him to turn up the volume upon seeing a picture of Defendant on the screen. According to Mr. Dozart, his wife stated that the photo was of the man that had robbed her. Although the man's hair was longer, she told her husband she was certain that it was the person that had robbed her. In court, Ms. Dozart identified Defendant as the same person seen that evening on the television news.

In addition to the Dozarts' testimonies, Detective David Rupf with the Lake Charles City Police Department also recounted his findings during the investigation. Detective Rupf testified that upon learning Ms. Dozart's cellular phone was inside the purse taken by her assailant, he dialed Ms. Dozart's number in the event someone might answer. After making several calls, he got a response. A woman, later identified as Bonita Hillary, answered the phone and reported that she obtained the phone from Defendant who had sold it to her that night for $80. Hillary described Defendant as a black male with a light build and long bushy hair. Hillary also indicated that Defendant was with another black male with a very dark complexion and bushy hair and that they were in a gray four-door vehicle. According to Hillary, Defendant was from Vinton and spent a lot of time in Lake Charles.

The phone was seized from Hillary, and a photograph of the phone was introduced into evidence. Detective Rupf testified that the phone was later confirmed to belong to Ms. Dozart.

4

Detective Rupf testified that Defendant's name was processed through the database at the sheriff's office and police department, and an address for Defendant was found. Additionally, a photo lineup was prepared that included Defendant's photograph. The following day, Detective Rupf was unable to locate Hillary to show her the lineup. Detective Rupf, however, spoke with a confidential informant (CI) who confirmed that Defendant lived at the address found in the database. The CI also told Detective Rupf that Defendant had big, bushy hair. At that time, Detective Rupf felt that with information at hand, he had probable cause to obtain a search warrant for Defendant's home.

With the search warrant in hand, a special response team (SRT) from the sheriff's office and city police canvassed the Vinton area to find Defendant. The officers determined that Defendant had family living at the address found in the database. Meanwhile, Hillary was located during a traffic stop and agreed to give a statement. The photo lineup was also shown to Hillary, and she was able to identify Defendant in the lineup. The photo lineup was introduced into evidence.

According to Detective Rupf, Hillary's statement was consistent with what Ms. Dozart reported. Hillary admitted in her statement that she was in a restaurant parking lot with Defendant the night of the offense. Hillary stated that she, Defendant, and Kenyon Budwine traveled to Lake Charles in a gray vehicle driven by Budwine. Hillary was in the passenger seat, and Defendant was in the back seat as they roamed around Lake Charles. When they saw a white female in a parking lot near a restaurant, Defendant told Budwine to stop the car and let him out. After Defendant got out of the car, Budwine drove around the block. When Budwine and Hillary returned to the parking lot, Defendant was pulling the woman to the road

5

while she was fighting to get away from him. Hillary then began screaming at Defendant to get in the car. Meanwhile, Defendant was trying to take the woman's purse and once he had the purse, he jumped in the back seat of the car, and Budwine took off. According to Detective Rupf, Hillary stated that she did not see the gun.

Ms. Dozart also provided Detective Rupf copies of her cell phone records for the time period around the incident so he could see what calls were made from the phone. Several calls were made to the address where Defendant was purportedly residing, as well as to other addresses in Vinton. After Detective Rupf contacted Hillary, Hillary placed calls to her contacts.

Detective Rupf testified that the firearm used in the offense was not recovered. He explained that this happens quite frequently because weapons are hard to find once they have been hidden or discarded.

As noted by this court in *State v. George*, 09-143, p. 5 (La.App. 3 Cir. 10/7/09), 19 So.3d 614, 618:

> When the key issue is not whether a crime occurred, but rather, the identity of the perpetrator, the state is required to negate any reasonable probability of misidentification. *State v. Hughes*, 05-992 (La.11/29/06), 943 So.2d 1047. One witness's positive identification is sufficient to support a conviction. *Id.*

In the instant case, Ms. Dozart's positive identification of Defendant as the perpetrator, alone, is sufficient to support his conviction. In light of Ms. Dozart's testimony and that of Detective Rupf regarding the corroborating evidence obtained during the investigation, Defendant's identity as the perpetrator was sufficiently proven by the State.

6

*Hearsay Testimony*

By this assignment of error, Defendant argues that the use of hearsay testimony regarding crucial facts in evidence constituted a violation of the confrontation clause. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004). Defendant refers specifically to the introduction of Hillary's statements via the testimony of Detective Rupf. As noted by Defendant, Hillary did not appear to testify, and her whereabouts were unknown at the time of trial.

However, Defendant did not object to Detective Rupf's testimony at any time during trial. Pursuant to La.Code Crim.P. art. 841(A), "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Because this issue was not asserted in the trial court, we will not address it on appeal. Uniform Rules—Courts of Appeal, Rule 1-3. *See also State v. McGinnis*, 07-1419 (La.App. 3 Cir. 4/30/08), 981 So.2d 881.

## CONCLUSION

For these reasons, Defendant's conviction is affirmed.

**AFFIRMED.**