# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-211

**STATE OF LOUISIANA**

**VERSUS**

**DEION JAMES HILL**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 147354
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.

**AFFIRMED, WITH INSTRUCTIONS.**

**Keith A. Stutes**
**Fifteenth Judicial District Court**
**Cynthis Simon**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Pride J. Doran**
**Dwazendra J. Smith**
**Doran & Cawthorne, P.L.L.C.**
**521 East Landry Street**
**Opelousas, LA 70571**
**(337) 948-8008**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Deion James Hill**

**SAUNDERS, Judge.**

On August 13, 2014, a Lafayette Parish Grand Jury returned a true bill charging Defendant, Deion James Hill, and another man with aggravated rape, a violation of La.R.S. 14:42. On August 25, 2016, Defendant moved to waive jury trial. The district court granted the motion on October 24 after briefing and argument. The bench trial began on February 6, 2018. On the same date, the court found Defendant guilty of a responsive verdict, oral sexual battery, a violation of La.R.S. 14:43.3.

On May 3, 2018, the district court heard Defendant's Motion to Quash on the Basis of Double Jeopardy and Motion to Continue Sentencing and for Post-Verdict Judgment of Acquittal or Alternatively New Trial. After hearing argument, the court denied the motion to quash and the motion for acquittal or new trial and set sentencing for July. On July 19, the court sentenced Defendant to seven years at hard labor. Defendant now seeks review by this court, assigning two errors.

**FACTS:**

On the night of June 6, 2014, the female victim, a college student at the time, went out to a local bar with some friends. While at the bar, she began to feel sick and manifested signs of intoxication, including vomiting. One friend took her home but left to sleep elsewhere. Her roommates and other friends arrived. The group included three males, two of whom were Defendant and his friend Lajuan Linton. The latter pair had been at the bar.

Later, one of the young women looked in on the victim and saw Defendant on top of her and the covers with his hands under the covers. The victim's friend made him and his friend leave. However, the men returned to the apartment and to the victim's room. Linton pled guilty to simple rape in a separate proceeding and testified at the Defendant's trial. He stated that he and Defendant performed sex acts

with the victim, but that said acts were consensual. He claimed that the victim told them, in graphic terms, that she wanted to perform sex acts with two men at once. According to Linton, the victim performed oral sex on one of them while the other man inserted his penis from behind her. He stated that eventually he went to sleep and woke up to find that Defendant was having sex with the victim, but she was telling him to stop. He testified that he remonstrated with Defendant who then left. According to Linton, the victim indicated that she had enjoyed the previous evening's activities; they hugged and kissed, then he left for work.

The victim testified that in 2014 she was a college student in Lafayette. On the evening of June 5, she went out to a local bar with friends and acquaintances. She acknowledged buying more than two drinks. She did not remember meeting Defendant or Linton, and she did not remember leaving the bar or getting home. The rest of the night she was in and out of consciousness, but at some point, she woke up and realized a man was performing a sex act on her. Later she woke up to a second man performing a sex act on her. She affirmed that she was subjected to non-consensual vaginal, oral, and anal sex. The victim tried to push away from each of the men but felt she didn't have any strength. Also, the men's actions caused her physical pain. She was menstruating at the time and the men's actions lodged her tampon inside her body.

As the victim incrementally remembered portions of the previous evening, she called her mother, who took her to the hospital; once there, a SANE (Sexual Assault Nurse Examiner) nurse examined her. Subsequently, the victim identified the two men in photographic line-ups and identified Defendant in open court.

The SANE nurse, Rebecca Havlik, testified that the victim reported being penetrated vaginally and anally as well as being touched on the vagina with a tongue. On cross-examination, the nurse testified that she thought the victim's references to

2

her mouth referred to kissing. However, during her direct testimony, the nurse stated that the victim had specifically referred to oral sex.

According to Havlik, the victim noted that her memory of the relevant events was spotty, and that she had consumed alcoholic beverages on the night of the offense. She had also used marijuana within the previous four days. The victim had bruises on her thighs, an abrasion on her outer vagina, redness on her hymen, and a laceration on her anus. A tampon was positioned sideways against her cervix. The nurse had to use forceps to remove it.

The nurse submitted a toxicology kit. The results were not submitted at trial.

Other testimony showed that DNA from Defendant's patrilineal line was found on the victim's lips. He was excluded as a contributor to DNA evidence found under the victim's right fingernails but could not be excluded regarding similar evidence under her left fingernails. He was excluded from the DNA profile on the victim's tampon. Defendant's DNA was also on a water bottle recovered from the scene.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find one error patent.

Defendant was advised at sentencing that he had two years within which to file an application for post-conviction relief. We find that the trial court failed to properly advise Defendant of the time limitation for filing an application for post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8 provides a defendant has two years *after the conviction and sentence become final* to seek post-conviction relief. Accordingly, we direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending written notice to Defendant

3

within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## ASSIGNMENTS OF ERROR:

Defendant assigns two errors; the second attacks the sufficiency of the evidence. We will address the sufficiency attack arguments first because if they are found to have merit, they result in acquittals for convictions not supported by sufficient evidence. *State v. Hearold*, 603 So.2d 731 (La.1992).

## ASSIGNMENT OF ERROR NUMBER TWO:

In his second assignment of error, Defendant challenges the sufficiency of the evidence. The analysis for such challenges is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The district court convicted Defendant of oral sexual battery, which is defined by La.R.S. 14:43.3. The statute states, in pertinent part:

> A. Oral sexual battery is the intentional touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender, or the touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim, when any of the following occur:

4

. . . .

(2) The offender is seventeen years of age or older and any of the following exist:

(a) The act is without the consent of the victim, and the victim is prevented from resisting the act because either of the following conditions exist:

. . . .

(ii) The victim is incapable, through unsoundness of mind, of understanding the nature of the act, and the offender knew or should have known of the victim's incapacity.

We find evidence in the record that shows that Defendant put his penis into the victim's mouth. This evidence was supplied by the testimony of Linton, who also committed sex acts on the victim, and the testimony of the victim. In addition, testing identified DNA consistent with Defendant's patrilineal line around the victim's mouth.

Defendant argues the DNA on the victim's mouth and on a nearby water bottle could have resulted from the two of them kissing. Linton indicated that Defendant and the victim did kiss; the victim's testified they did not. In viewing the DNA evidence, the victim's testimony, and Linton's testimony in a light most favorable to the State, there is sufficient evidence in the record to demonstrate that the victim had oral contact with Defendant's genitals.

Defendant also argues the evidence does not show that she was so intoxicated that she was unable to consent to have sex. Alternatively, he argues the evidence does not show that he knew of should have known that she was unable to consent. He observes that the State did not submit a toxicology report.

Defendant also points to inconsistencies in the evidence; for example, the victim initially reported that she did not push Defendant away or tell him to stop.

5

She later testified that she did resist. Defendant also notes the victim initially indicated that a single assailant raped her. However, she told the SANE nurse that there were two assailants and later testified similarly. He also notes Linton's testimony, mentioned earlier, indicating that the victim expressed a desire to participate in sex acts with both men at the same time.

Regarding intoxication, the witnesses who were at the bar with the victim noted that she drank alcoholic beverages to the point of vomiting and had to be taken back to her apartment and put to bed. Also, the SANE nurse testified that the victim's use of her Prozac and Xanax in combination with alcohol could lead to a blackout. However, the victim testified she did not take her prescriptions on the night of the offense.

We find that a factfinder could rationally conclude that a person who drank to the point of vomiting, had to be taken home, and put to bed was obviously intoxicated and unable to legitimately consent to sexual activity. Also, the victim's internally-lodged tampon and lacerated anus are logical indications that the sexual acts that occurred were not consensual.

As noted earlier, DNA consistent with Defendant's patrilineal line was found in the area of the victim's mouth. Defendant posits that the DNA was on her mouth because they kissed.

Accordingly, we find that this assignment lacks merit, as the record contains sufficient evidence to support Defendant's conviction for oral sexual battery.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In his first assignment of error, Defendant argues that his conviction is barred by the Constitutional rule against double jeopardy. In his view, the district court found him not guilty but was subsequently convinced by the State to find him guilty of a lesser charge. We note the following colloquy:

THE COURT: I've looked at the Aggravated Rape, as well as the Forcible Rape, or even the Simple Rape as a responsive verdict. I've listened to the evidence in this case. This is quite a serious case, to say the least.

I've listened to Ms. Kathleen Theriot who was obviously the document evidence collector in this case. She collected water bottles and blue panties and a bra. And of course, she indicated there were no condoms found at the crime scene.

I listened to Detective Benjamin Suire who I've known for some time, and he is quite a capable officer. He testified that he knew of no evidence linking the defendant to the crime scene. Also, there was a toxicology report that he didn't receive. Ms. Rebecca Havlik, who was the Sexual Assault Nurse, who was expected, or should have been the one to have a toxicology report conducted. That was not done. So, we don't have the benefit of that report.

Officer Gass (assumed spelling), part of his report was introduced into evidence. And in his report he indicated that Lauren Gass (sic) did not resist, and she did not see the defendant with any condoms. And there again, as I said, Officer Suire says he knows of no evidence connecting the defendant to the crime scene.

Also, Ruby Lapeyrouse said the victim here was too drunk to remember anything about the crime the following morning. That's what my note indicates.

And of course, you have Rachel Snider who testified that the -- she didn't see anybody with their clothes off, not the defendant nor the victim in this instance. Nobody actually testified that they saw them have intercourse or engage in sexual activity. One witness testified that Mr. Deion had his pants sagging, but did not indicate that he had his pants completely off.

So other than the fact that he had his hand under the comforter that was on that bed, I'm not convinced that beyond a reasonable doubt, given the seriousness of this case, that this rape actually occurred with this defendant.

Now, the other defendant testified that he had sex with the victim. He admitted that, so -- and I'm just going to find the defendant not guilty. It's a sad case.

MS. SIMON: Your Honor, there was responsive Sexual Battery as well, Your Honor.

MR. DORAN: Objection, Judge.

THE COURT: Hang on. Hang on a second.

7

Mr. Doran, tell me why Sexual Battery is not a responsive verdict.

MR. DORAN: Because, as the Court has already pointed out, the only person, um, to say, beyond Lajuan Linton, who apparently his version of events the Court is rejecting, to say there was any contact between the defendant and Ms. Burns, is Payton Walker who says he had his hand under the comforter. She didn't see where his hand was, she didn't -- I mean, that doesn't rise to the level of sexual battery.

THE COURT: So if it is done without consent, Payton indicated he was on top of her, and he had his hand under the comforter.

MR. DORAN: It's got to be with a sexual purpose.

THE COURT: Well, to arouse sexual desire. What else, what other purpose could it have meant?

MR. DORAN: It could have been a number of things, Your Honor. I mean, I just -- keep in mind, the lights were off. She walks in the room and she says she didn't see where his hands were. Sexual battery, I just don't see how it fits.

Can I take a look at -- what is the article for sexual battery?

THE COURT: 43.1.

MR. DORAN: Yes, Sexual Battery is the intentional touching of the anus or genitals of the victim by the offender. Anus or genitals is a requisite. It doesn't fit.

THE COURT: Or any part of the body of the defendant.

MR. DORAN: No. Or any part of the body of the offender. It is the touching of the anus or the genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through the clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality. There is no -- there has been no evidence that he touched the anus or genitals of this young lady. I mean, I know it's a last grab by the State. It just doesn't fit.

THE COURT: Hold on.

MR. DORAN: Your Honor, misdemeanor Sexual Battery is the intentional touching of the breast or buttocks. There has been no testimony that he touched her anus, genitals, breasts or buttocks.

MS. SIMON: Your Honor, there was testimony by Lajuan Linton that all of that occurred. There was testimony. There was testimony by Lauren Burns that that occurred. She identified Mr. Deion in a photographic lineup.

8

MR. DORAN:      It's a -- trying to compromise a verdict, but it's just not there.

THE COURT:      Well, I think the Sexual Battery is an appropriate responsive verdict.

(Pause)

Madam Clerk, have the record reflect that the Court will find in favor of the responsive verdict, Oral Sexual Battery, and the defendant is to report Thursday for sentencing at 10:00.

MR. DORAN:      Oral Sexual Battery?

THE COURT:      Oral Sexual Battery. There was testimony he was kissing her and -- yeah.

THE CLERK:      Judge, what's the sentence?

THE COURT:      Pardon?

THE CLERK:      What is the sentence?

THE COURT:      I'm going to sentence him Thursday at 10:00.

MR. DORAN:      Judge, Oral Sexual Battery is the intentional touching of the anus or genitals of the victim using the mouth or tongue. Kissing --

THE COURT:      Well, there was testimony that she indicated that the tongue was used to penetrate her vaginal area.

MR. DORAN:      She said she didn't remember which one.

THE COURT:      Well, I understand. Based on compelling evidence, I'm finding Oral Sexual Battery and I'll see you Thursday morning at 10:00.

Is he out on bond now, or what?

MR. DORAN:      Yes.

THE COURT:      He is to remain on bond until Thursday at 10:00.

The State responds that it was simply checking to make sure the court had considered all the available responsive verdicts and rendered its final judgment.

9

More concretely, the State argues that the verdict was not final until the court instructed the clerk to enter the verdict in the record.

While we find that the State's argument a practical view of the matter, we need not address the merit of that argument. Rather, we find that a clear reading of the record transcript indicates that the trial court did not find guilt regarding the three rape charges stated in the record. The State, as stated in the record, was merely reminding the trial court of a responsive verdict that the trial court had not yet discussed or ruled upon. Thereafter, the trial court deliberated the crime of oral sexual battery and found Defendant guilty. Accordingly, we find no double jeopardy exists in this case. This assignment of error lacks merit.

## DECREE:

Defendant's conviction is affirmed. We direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

**AFFIRMED, WITH INSTRUCTIONS.**

10