# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-481


**STATE OF LOUISIANA**

**VERSUS**

**CARLOS ANTHONY TOBY**



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR-169223.1
HONORABLE ROYALE L. COLBERT, JR., DISTRICT JUDGE

**********

## D. KENT SAVOIE
## JUDGE

**********

Court composed of D. Kent Savoie, Charles G. Fitzgerald, and Gary J. Ortego, Judges.


**CONVICTION REVERSED; JUDGMENT OF ACQUITTAL ENTERED; SENTENCE VACATED.**

**Donald Dale Landry**
**District Attorney**
**Kenneth P. Hebert**
**Assistant District Attorney**
**Fifteenth Judicial District Court**
**Post Office Box 3306**
**Lafayette, Louisiana 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Todd Samuels Clemons**
**Janet D. Madison**
**Bradley T. Rasile**
**Nadina A. Beach**
**Todd Clemons & Associates**
**1740 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 477-0000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Carlos Anthony Toby**

**SAVOIE, Judge.**

On December 18, 2018, a Lafayette Parish grand jury indicted Defendant Carlos Toby and his brother Shavis Toby with one count of second degree murder, a violation of La.R.S. 14:30.1, and one count of conspiracy to commit second degree murder, in violation of La.R.S. 14:26 and La.R.S. 14:30.1. There was extensive pretrial activity, including a motion to sever that Defendant filed in December 2019, argued and re-urged in 2020, then filed again in a new motion in March 2021 and argued again in April 2021. The district court denied all requests for severance.

The parties selected a jury on June 21-23, 2021. The jury began hearing evidence on June 24. Ultimately, the jury returned a verdict on July 3, finding Defendant not guilty of second degree murder and guilty of conspiracy to commit second degree murder.

On April 11, 2022, the court sentenced Defendant to twenty-five years, with benefit of parole, along with a $16,987 restitution to the victim's family to cover hospital expenses. Defendant now seeks review of his conviction and sentence, assigning five errors. For the following reasons, Defendant's conviction is reversed, a judgment of acquittal is entered, and his sentence is vacated.

## FACTS

In Lafayette, Louisiana, on the night of October 13, 2018, an assailant shot the victim, Brandon Broussard, multiple times. The victim died of blood loss.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues the evidence adduced at trial was insufficient to support his conviction for conspiracy to commit second degree murder. Specifically, he argues the State's evidence did not demonstrate a

prior agreement between him and his co-defendant, Shavis Toby, to commit the murder.[1]

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

> The elements of conspiracy are stated in La.R.S. 14:26(A):

> Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

As this court has explained: "It is essential to a conspiracy that there be a joining of the minds to accomplish a concerted action which has an unlawful purpose." *State v. Leger*, 04-1467 (La.App 3 Cir. 6/1/05), 907 So.2d 739, *writ denied*, 05-2263 (La. 4/17/06), 926 So.3d 509, *cert. denied*, 549 U.S. 910, 127 S.Ct. 245 (2006). In his brief, Defendant correctly states: "At trial, not one witness testified regarding an agreement; nor did the State present any recording,

---

[1]Again, the co-defendants are brothers.

messages, or communication between the two relating to an agreement to kill the alleged victim or to inflict great bodily harm upon the alleged victim."

The State's brief relies on the cellphone-location evidence it introduced at trial. As the State indicates, the Toby brothers engaged in "multiple phone calls and texts to each other" in the hours approaching the murder. Further, Detective Sonny Stutes testified that cellphone mapping showed that on the date of the crime, Shavis Toby travelled from New Iberia to Lafayette, was near the crime scene at the time of the offense, then headed south of Lafayette again. Meanwhile, Defendant travelled east from Texas and was in Lafayette at the time of the murder as well. As the brothers' cell phone records indicated, they stopped communicating once they were both in the vicinity of a Lafayette barbershop. Also, surveillance cameras showed a black Cadillac pass the crime scene earlier in the evening on the date the shooting occurred, and Defendant drove a black Cadillac.

The State summarizes its argument by stating: "The defendant and his brother met up in Lafayette at a barber shop, scoped out the scene of the crime, returned to the shop, and then waited to spring their trap." Our review of the record and the pertinent exhibits suggests the State's characterization is an overstatement of what its evidence demonstrates. One difficulty with the location information regarding Defendant's phone, based on cellphone tower information, is that it locates the pertinent cellphone within an average radius of two miles. This is well short of pinpoint accuracy. Also, none of the State's witnesses could identify Defendant as the driver of the Cadillac seen in the vicinity of the crime scene in the hours before the shooting. Louisiana jurisprudence affirms that "agreement or combination" can be inferred from circumstantial evidence. *State v.*

3

*Sant*, 18-752 (La.App. 3 Cir. 4/17/19), 268 So.3d 1102, *writ denied*, 19-777 (La. 11/12/19), 282 So.3d 226. However, the State's evidence was fairly weak on this point. Further, in a case based on circumstantial evidence, "the evidence 'must exclude every reasonable hypothesis of innocence.'" *State v. Quinn*, 19-647, pp. 6-7 (La. 9/1/20), 340 So.3d 829, 834 (quoting La.R.S. 15:438), *cert. denied*, 141 S.Ct. 1406 (2021).

The State's theory of the case was that Defendant wanted to avenge his earlier loss to the victim in a bar fight. Further, according to the State, he enlisted his brother to achieve said vengeance by killing the victim. The State was able to place Shavis Toby at the scene, as part of a rubber glove left there had his DNA on it. Thus, it was clear that someone shot the victim to death and that Defendant's brother was at the scene. Also, Defendant had a reason to be angry with the victim, due to the aforementioned fight. However, as noted earlier, the State lacked any direct evidence of an agreement of any "meeting of the minds" between the Toby brothers, seeking to kill the victim.

In order to show the existence of a criminal meeting of the minds between the Toby brothers and thus prove conspiracy, the State relied heavily on a computer program called CellHawk. This is a mapping program based on cell phone tower location data; law enforcement used it to produce a visual representation of the Toby brothers' movements shortly before, during, and after the offense.

Again, the State's case lacked any direct evidence of an agreement, combination, plan, or any other meeting of the minds for the Toby brothers to kill the victim. While this aspect of conspiracy can be inferred from a defendant's actions, all the State could show was that Defendant was within two miles of the

4

crime scene about three hours before the shooting, and that a video showed a car similar to Defendant's drive down the victim's street at about that time. The State also produced evidence suggesting the Toby brothers were both at an area barbershop a few hours before the crime. Further, the State demonstrated that the victim defeated Defendant in a fistfight a couple of weeks before the shooting. As mentioned earlier, DNA evidence put the co-defendant, Carlos Toby's brother Shavis, at the scene of the crime.

We acknowledge that the evidence summarized is broadly indicative of wrongdoing. A man is beaten in a fight, a couple of weeks later his brother kills the man who administered the beating, and the man is shown to have driven into town and been within two miles of the scene on the evening the crime occurred. While the foregoing scenario certainly gives rise to suspicion, it does not constitute proof beyond a reasonable doubt. Although the State argues the Toby brothers "met up in a Lafayette barber shop [and] scoped out the scene of the crime," its proof that they met at the barbershop was questionable, given the two-mile radius given for Defendant's approximate locations. While there was testimony that Defendant had been in the barbershop, there was none that established he was in the shop on the date of the murder. Also, he was not identified as the driver of the Cadillac depicted on security video from near the scene. The Cadillac was not positively identified as his. Although the CellHawk evidence indicated Defendant was in the area at the same general time that the Cadillac appeared on the video, it is entirely possible that he was two miles away.

Perhaps the key question in this sufficiency review is whether the State's evidence was enough for the jury to infer guilt or whether said evidence left the

5

jury in the realm of speculation. In a recent case, the supreme court majority stated:

> Based on the evidence presented by the State at this trial, the jury could only speculate -- from metabolites detected in applicant's blood and urine -- that she was impaired or that her ingestion of controlled dangerous substances was a contributing factor in the tragic accident. Therefore, due process requires reversal of this vehicular homicide conviction. *See Jackson v. Virginia*, 443 U.S. at 314, 99 S.Ct. at 2786 ("a conviction based upon a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm"). Because a rational trier of fact could not reasonably conclude, without speculating, that applicant's ingestion of controlled dangerous substances was a contributing factor to the fatal accident, applicant is entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). Accordingly, we reverse the ruling of the court of appeal, vacate applicant's conviction and sentence for vehicular homicide, and enter a judgment of acquittal.

*State v. Trahan*, 20-1233, p.7 (La. 12/10/21), 332 So.3d 602, 606.

The critical question is whether the current conviction is based upon permissible inference or impermissible speculation. Based on the record before us, we find that Defendant's conviction is based on impermissible speculation and due process requires reversal. This decision renders Defendant's other assignments of error moot.

## DECREE

The evidence adduced by the State was insufficient to prove that Defendant engaged in any agreement or combination to murder the victim. Therefore, Defendant's conviction is reversed, a judgment of acquittal is entered, and his sentence is vacated.

**CONVICTION REVERSED; JUDGMENT OF ACQUITTAL ENTERED; SENTENCE VACATED.**